LEVIN H. CAMPBELL, Circuit Judge.
 

 Laurent and Meredith Brodeur appeal from a decision of the Bankruptcy Appellate Panel for the First Circuit, 18 B.R. 388
 
 [1]
 
 holding them liable to the debtor, Smith Corset Shops, Inc. (Smith) for conversion. We reverse.
 

 Beginning on January 1, 1979, Smith operated a shop in Woonsocket, Rhode Island, upon premises leased from the Brodeurs. Smith defaulted on the March 1980 rent and later that March closed its store and ceased doing business. On March 25, 1980, the Brodeurs brought an action against Smith for trespass and ejectment in the local Rhode Island district court. R.I.Gen. Laws § 34-18-9 (1981 Supp.). Smith received actual notice of this action on March 26 but nevertheless failed to appear. The court entered a default judgment and issued execution ordering Smith’s eviction. A Rhode Island constable, acting under the execution, moved Smith’s inventory from the premises to Jones Warehouse in Providence.
 
 See
 
 R.I.Gen.Laws § 34-18-9.1 (1981 Supp.).
 
 [2]
 
 There was evidence at trial that a Smith employee was actually present at the store and removed some of the goods while the constable was moving the balance.
 

 Unbeknown to the Brodeurs, the state court, or the constable, Smith had filed a petition on March 21, 1980, for reorganization in bankruptcy under Chapter 11, title 11. The bankruptcy petition preceded by four days the commencement of the Brod-eurs’ trespass and ejectment action. The landlords first received notice of the bankruptcy proceeding on April 15, several days after the property had been moved to the warehouse. On that same day Smith, now acting as debtor-in-possession, brought the present action in the United States Bankruptcy Court for the District of Massachusetts, 6 B.R. 324, charging the Brodeurs with conversion of the inventory. Thereafter, the Brodeurs’ attorney, Mr. DiGianfi-lippo, and Smith’s representatives held somewhat confusing negotiations during which DiGianfilippo may have told Smith that it could not obtain the goods unless Smith dismissed the conversion suit. At the same time, however, Mr. DiGianfilippo apparently sent a letter to the warehouse authorizing the unconditional release of the goods to Smith.
 
 [3]
 
 The parties also discussed
 
 *974
 
 who should bear the cost of moving the goods from Providence to Smith’s Brockton, Massachusetts location. Smith claimed that the landlords at one time agreed to pay these expenses. They denied so doing.
 

 With Smith apparently unwilling to dismiss the case, it went to trial before the bankruptcy court, the issue being whether the constable’s transfer of the property to the Providence warehouse made the Brod-eurs convertors.
 

 On October 7, 1980, the bankruptcy court issued a comprehensive memorandum and order finding for the Brodeurs. The court ruled that the absence of any notice or knowledge of the filing of a bankruptcy petition at the time the goods were being removed rendered removal of the inventory non-tortious notwithstanding the automatic stay provisions of 11 U.S.C. § 362. The court went on to state that the Brodeurs had acted in good faith; that the goods had been held available for Smith; and that the Brodeurs had informed Smith of their availability. The memorandum and order concluded with the words, “Judgment for the defendants.”
 

 At this point, the case took an unfortunate procedural twist. Apparently feeling that his memorandum and order sufficed, the judge did not enter a separate document setting forth the judgment, as required by Rule 921 of the Bankruptcy Rules.
 

 Unsure whether the October 7, 1980, memorandum and order was or was not a judgment, Smith did not file a notice of appeal within 10 days thereafter.
 
 See
 
 Rule 3 of the First Circuit Rules Governing Appeals from Bankruptcy Judges to District Court, Appellate Panels and Court of Appeals (First Circuit Rules) and Bankruptcy Rule 802.
 
 [4]
 
 That Smith was not alone confused in this regard is indicated by the fact that on October 21 the Brodeurs tendered to the court a proposed judgment with a cover letter citing Rule 921. The bankruptcy court nonetheless took no action to enter a separate judgment. Smith, apparently concerned that no final judgment would be forthcoming, then filed an appeal with the Bankruptcy Appellate Panel for the First Circuit on October 23, 1980.
 

 On December 23, 1980 the Brodeurs moved that the appellate panel dismiss the appeal for lack of. jurisdiction on the ground that the notice of appeal was not filed within the 10-day period prescribed by Rule 3 of the First Circuit Rules and Bankruptcy Rule 802. Smith thereupon sent a letter to the bankruptcy court citing Rule 921 and requesting entry of a separate document setting forth the judgment. The bankruptcy court replied on January 6, 1981, that “there was a clear and unambiguous order entered on October 7,1980 which sufficiently complies with the spirit and intent of Bankruptcy Rule 921.” On January 7,1981, the appellate panel dismissed the appeal. On January 13, 1981 Smith filed a motion for reconsideration of the dismissal explaining that the notice of appeal was not filed within the required 10 days because of uncertainty caused by the lack of a separate document setting forth the judgment. The bankruptcy court’s January 6 letter was attached as an exhibit to the motion. On February 4 the appellate panel, without giving any reason, reinstated the appeal.
 

 The panel thereafter ruled that the evidence did not support the bankruptcy judge’s finding that the Brodeurs made the inventory unconditionally available to Smith after learning about the bankruptcy. The panel found, instead, that the Brodeurs had conditioned return of the goods upon Smith’s willingness to withdraw the conversion action. Concluding that this continued withholding amounted to conversion, the panel deemed it unnecessary to determine whether the original removal of the inventory had been tortious. The Brodeurs appealed to this court from the panel’s decision. 28 U.S.C. § 1293(a).
 

 
 *975
 
 I.
 

 We must first consider whether the Bankruptcy Appellate Panel had jurisdiction to decide the appeal. There are two claimed procedural infirmities: the lack of a separate document setting forth the judgment and Smith’s failure to file the notice of appeal within 10 days after entry of the memorandum and order. We discuss each problem in turn.
 

 Rule 921 of the Bankruptcy Rules, 11 U.S.C., provides,
 

 A judgment in an adversary proceeding or contested matter shall be set forth on a separate document .... A judgment is effective only when entered in this manner.
 

 The rule was derived from Rule 58 of the Federal Rules of Civil Procedure. Advisory Committee Notes to Rule 921. Rule 58 was designed to aid parties in knowing when they must file appeals by eliminating uncertainty as to whether an opinion or memorandum constituted a judgment for the purposes of appeal.
 
 Bankers Trust Co. v. Mallis,
 
 435 U.S. 381, 385, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (per curiam). To serve that function, courts should apply the rule “mechanically.”
 
 United States v. Indrelunas,
 
 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (per curiam).
 

 In the present case the bankruptcy court’s six-page memorandum and order did not satisfy the rule’s requirements. It constituted, in essence, an opinion, and the court should have entered a judgment pursuant thereto on a separate document, as the rule provides. “Separate document” means one separate from an opinion or memorandum of the court.
 
 See, e.g., State National Bank of El Paso v. United States,
 
 488 F.2d 890, 893 (5th Cir.1974),
 
 citing
 
 6A
 
 Moore’s Federal Practice
 
 ¶ 58.01[1.-02] at 58-14.
 

 A court’s failure to comply with the rule’s requirements ordinarily disables an appellate court from reviewing the case.
 
 Id. See United States v. Indrelunas,
 
 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202. But, the rule is not jurisdictional. It should be read to prevent loss of the right of appeal, not to facilitate loss.
 
 Bankers Trust Co. v. Mallis,
 
 435 U.S. at 386, 98 S.Ct. at 1120.
 

 If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, the district court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose.
 

 435 U.S. at 385, 98 S.Ct. at 1120.
 

 The bankruptcy court unequivocally made clear on January 6,1981 its view that its order , and memorandum constituted a final judgment. After this clarification, both parties became aware of the court’s intentions, and thereafter the case underwent exhaustive appellate review. Nothing but delay and expense would be caused were we to treat the case as if judgment was never entered. We therefore hold that judgment was in fact entered. Nevertheless, given the confusion prevailing prior to January 6, 1981, it would be manifestly unfair to treat the actual date of the memorandum, October 7, 1980, as the operative date of the judgment. To do so would leave appellants in a Catch-22 situation where the possibility of a timely appeal would have been cut off by judicial action taken in contravention of Rule 921. We think, and so hold, that the effective date of judgment was January 6,1981, the date the judge announced that his memorandum and order constituted a judgment.
 

 This holding resolves the Brodeurs’ contention that the appellate panel lacked jurisdiction because Smith did not file a notice of appeal within 10 days of the October 7 memorandum and order. As January 6 — the date of the clarifying letter — rather than October 7 was the date of judgment, the case is governed by analogy to Rule 4(a)(2) of the Federal Rules of Appellate Procedure. Rule 4(a)(2) states that notice of appeal filed after announcement of judgment but prior to the entry of judgment will be treated as filed after the entry.
 
 *976
 
 Because judgment was entered on January 6, 1981 and the notice of appeal was filed prior to that date, the notice was timely by analogy to Rule 4(a)(2).
 

 II.
 

 Two issues were raised on the merits. First, whether the transfer of the inventory from the store to the warehouse constituted a conversion. Second, whether the Brod-eurs’ failure to release the goods unconditionally after they learned of the bankruptcy action constituted a conversion.
 

 On the first issue, Smith argues as follows. The moving of the inventory constituted a conversion because the state execution ordering and authorizing such action was automatically invalidated by Smith’s earlier bankruptcy petition. 11 U.S.C. § 362. Since the property was moved without sanction of effective legal process, and since in Smith’s view good faith is not a defense to the tort of conversion, the Brod-eurs were guilty of a conversion notwithstanding their complete unawareness that Smith had become bankrupt and their good faith adherence to state legal procedures.
 

 We need not decide whether Smith is correct that good faith is never a defense to conversion in Rhode Island.
 
 But see
 
 Restatement (Second) of Torts § 222a (good faith a factor to tort of conversion). Even if not, the question would remain whether in these particular circumstances the Brod-eurs’ defense of having acted under state legal process was nullified by the automatic stay provision of the bankruptcy code. We think that question must be answered in the negative, given the fact the Brodeurs were not only ignorant of the filing of the bankruptcy petition but this ignorance was directly attributable to the plaintiff’s unreasonable behavior in these circumstances.
 

 Under section 362 of the bankruptcy code, the filing of a bankruptcy petition serves as an automatic stay of most actions against the debtor including eviction actions.
 
 In re Butler,
 
 14 B.R. 532 (Bkrtcy.S.D.N.Y.1981). Ordinarily, orders issued in violation of the stay are void.
 
 Kalb v. Feuerstein,
 
 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). Nevertheless, equitable and due process considerations apply in the exercise of bankruptcy jurisdiction. In
 
 Bank of Marin v. England,
 
 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), the Supreme Court considered whether a bank acting without notice or actual knowledge of a depositor’s bankruptcy could be liable for honoring the bankrupt’s check. The bankruptcy act at that time provided that upon the filing of a bankruptcy petition, title to the bankrupt’s property automatically turned over to the trustee. Section 70 Bankruptcy Act, 52 Stat. 879 (1938) (superseded by 11 U.S.C. § 542). Nonetheless, the Court suggested due process issues might be implicated if the bank were held liable, 385 U.S. at 102, 87 S.Ct. at 276,
 
 citing Mullane v. Central Hanover Bank & Trust,
 
 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and stated “[t]here is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.” 385 U.S. at 103, 87 S.Ct. at 277. Accordingly, the Court carved out an exception to the Act’s turnover requirements and freed the bank from liability. Congress apparently approved of the result and codified the principle in section 542(c) of the new bankruptcy code. S.Rep. No. 989, 95th Cong., 2d Sess. 84,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5879. That section provides in part that
 

 an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith ... to any entity other than the trustee, with the same effect ... as if the case under this title concerning the debtor had not been commenced.
 

 Smith argues that section 542(c) does not apply here because it covers only cases in which property is “transferred” to a third party, and there is evidence that the Brodeurs maintained some control over the property while it was in the Providence
 
 *977
 
 warehouse.
 
 [5]
 
 But whether or not section 542(c) is technically applicable, it is a powerful indication of congressional acceptance of the principle set out in
 
 Bank of Marin.
 
 And the equities here are if anything more pressing than those in
 
 Bank of Marin.
 
 The Brodeurs not only acted without knowledge of the bankruptcy filing but did so after having notified Smith and securing a court order. They personally did not dispossess Smith; the constable did so acting under the execution. Smith, for its part, not only had advance notice of the proposed action, it apparently had an agent on hand while the property was moved. Yet Smith made no effort to advise either the Brodeurs, the court, or the constable of the pending bankruptcy action until the property had been moved and stored. If successful in its conversion action, Smith would extract from the innocent Brodeurs the full original cost of an inventory which may have become unmarketable.
 
 [6]
 
 Given these facts, we hold that Smith may not recover in conversion for the removal of the inventory.
 
 [7]
 

 Our holding does not undermine the automatic stay. The stay is one of the “fundamental debtor protections” provided by the bankruptcy act, designed to “stop[] all collection efforts, all harassment, and all foreclosure actions” against debtors. S.Rep. No. 989,
 
 supra
 
 at 54,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad.News at 5840. It must be given full effect. We only hold that Smith could not remain stealthily silent when it knew that the goods were being moved pursuant to court order and then turn around and successfully sue the Brodeurs for the alleged conversion of the goods. We do not think Congress envisioned any such misuse of the automatic stay.
 

 III.
 

 We next discuss whether a conversion took place because the Brodeurs did not release the goods unconditionally after they learned about the bankruptcy. This was the theory on which the appellate panel based its decision. Even, however, if we were to accept the appellate panel’s reinterpretation of the evidence before the bankruptcy court,
 
 [8]
 
 we would disagree with its conclusion.
 

 
 *978
 
 In particular, we think the appellate panel erred in attempting to evaluate the legal effect of the Brodeurs’ attorney’s later statements regarding release of the goods without first deciding whether or not the original transfer of the inventory to the warehouse was tortious. While it is true that a party that originally possesses goods in a lawful manner may later become liable for conversion if it wrongfully refuses to return the goods,
 
 Ludwig v. Kowal,
 
 419 A.2d 297 (R.I.1980); Prosser,
 
 supra
 
 at § 15, it is necessary to analyze the conditions under which the goods were originally held in order to determine whether the refusal was “wrongful.” In this case that means that the panel had to consider the interaction of the bankruptcy law and the state’s landlord-tenant law.
 
 [9]
 

 When the Brodeurs received notice of the bankruptcy action on April 15, the goods had already been moved. The ejectment action was completed, the execution carried out. The Brodeurs had already paid for the moving and storage charges in reliance upon the state law that obligated Smith to bear the costs. R.I.Gen.Laws § 34-18-9.1 (1981 Supp.). And as discussed above, the Brodeurs had not in fact committed a conversion in the circumstances. Given these facts we do not think the efforts of the Brodeurs’ attorney to secure the termination of the conversion action contemporaneously with release of the goods was a sufficiently serious interference with the owner’s control to constitute a conversion— especially where the alleged refusal to release arose during negotiations and where a letter was in fact sent to the warehouse directing unconditional release, see note 3
 
 supra. See
 
 Prosser,
 
 Law of Torts
 
 § 15 (4th ed. 1971). The situation is again very analogous to that covered by section 542(c) of the bankruptcy code. Section 542(c) frees parties, who without knowledge of the bankruptcy action transfer goods of the debtor, from the obligation to turn the goods over to the estate. In the present case the Brodeurs did not actually transfer the property to a third party, but they did pay to have the property transferred to a different location and stored there. To hold them liable in tort for not unconditionally “turning over” the goods, without even considering the events before April 15, is to ignore the equitable considerations embedded in section 542(c) and
 
 Bank of Marin.
 

 We also note that the actions which the appellate panel cited in finding a conversion were not referred to in the complaint nor were they the same actions relied upon at the trial in the bankruptcy court. The complaint, filed on April 15, alleged only that the original taking of the property constituted a conversion. The trial proceeded on that theory. Indeed, counsel for Smith expressly denied that its theory was based on a post-April 15 refusal to release the goods.
 
 [10]
 
 Given these facts, the Brodeurs had no reason at trial to anticipate the use to which the appellate panel later put the facts in the record and consequently could not have been expected to have presented a defense to that theory.
 
 Cf. Vargas v. McNamara,
 
 608 F.2d 15, 19 (1st Cir.1979)
 
 *979
 
 (defendant is prejudiced when evidence introduced at trial is used to support a claim that was raised neither in the pleadings nor at trial).
 

 We thus believe that the appellate panel erred in overturning the findings of the bankruptcy judge.
 

 The order of the bankruptcy appellate panel is reversed. The judgment of the bankruptcy court is affirmed.
 

 [1]
 

 . Appointed pursuant to 28 U.S.C. § 160.
 

 [2]
 

 . Under the cited Rhode Island statute, whenever a tenant’s personal property is removed from the premises by mandate of an execution, the tenant is liable for the entire cost of moving the property before the personal property can be released to him.
 

 [3]
 

 .The bankruptcy court, which had the letter before it, expressly so found. Thereafter, the letter and other trial exhibits were lost; but we note that the bankruptcy appellate panel, which also had these exhibits, did not specifi
 
 *974
 
 cally dispute this finding, although it rejected others.
 

 [4]
 

 . The Bankruptcy Reform Act of 1978 provided that existing bankruptcy rules, to the extent they are not inconsistent with the new Act would remain effective until they are repealed or superseded by new rules. Pub.L. No. 95-598, § 405(d), 92 Stat. 2549, 2685 (1978).
 

 [5]
 

 . Under Rhode Island law, control would appear to be vested in the constable. R.I.Gen. Laws § 34-18-9.1 (1981 Supp.). Nevertheless, because the Brodeurs were the ones who paid the warehouse storage charges, it is not surprising that they were seen as the ones who controlled the property while it was in the warehouse.
 

 [6]
 

 . The remedy for conversion is a forced judicial sale of the property. Prosser, Law
 
 of Torts
 
 § 15 (4th ed. 1971).
 

 [7]
 

 . Courts have generally refused to apply contempt sanctions, the usual remedy for violations of the automatic stay, in cases where the defendant acted without notice or actual knowledge of the bankruptcy petition.
 
 See, e.g., In re Hailey,
 
 621 F.2d 169, 172 (5th Cir.1980);
 
 In re Reed,
 
 11 B.R. 258, 268-72 (Bkrtcy.D.Utah 1981), and cases cited therein;
 
 Collier on Bankruptcy
 
 § 362.03 (15th ed. 1982); see
 
 also In re Intaco Puerto Rico, Inc.,
 
 494 F.2d 94, 97 (1st Cir.1974). While the equitable and due process considerations are great in such cases because contempt is an extraordinary remedy, they are also substantial here, because of the particular facts of this case and because conversion, as Smith envisions it, is a strict liability tort that would shift the entire cost of the goods onto the Brodeurs.
 

 [8]
 

 .The appellate panel was influenced by evidence that the Brodeurs’ attorney “did not equivocate in his continued demand that the action for conversion be dismissed as a prerequisite to the surrender Of the inventory.” This seems to us a slender reed upon which to have overturned the bankruptcy judge. The judge had found that
 

 the attorney for the defendants, sent a letter to the warehouse with the debtor’s knowledge that it authorized the release of the stored merchandise to Smith Corset. All storage charges through June 15, 1980 were paid by the defendants who caused the goods to be continually held available for the debt- or.
 

 While defendant’s attorney did indeed testify that he had demanded dismissal of the conversion action, his testimony is susceptible to the interpretation that the warehouse was told to release the goods unconditionally to the debtor, whatever collateral understanding defendant’s attorney sought or obtained. The appellate panel was bound by the factual findings of the bankruptcy court unless they were clearly erroneous. To the extent we can assess the incomplete record before us,
 
 see
 
 footnote 3
 
 supra,
 
 we doubt that the bankruptcy court was clearly erroneous.
 

 [9]
 

 . Except for any effect of the automatic stay provisions of section 362, the Brodeurs’ alleged refusal to return the goods except upon the dismissal of the suit would not have been tor-tious. Under Rhode Island law Smith would have had no right to the goods unless it paid the moving and storage charges to the constable who would then have reimbursed the Brodeurs for their expenses. R.I.Gen.Laws § 34 — 18-9.1 (1981 Supp.). There is no evidence that Smith offered to pay those fees. Therefore, as Smith had no right to the goods under Rhode Island law, the Brodeurs could not have been liable for conversion simply for saying that they would release the goods and presumably bear the storage costs themselves only so long as Smith dismissed the conversion action. Analyzed under Rhode Island law only, the Brodeurs’ refusal is nothing more than a proper settlement offer, a willingness to suffer the storage costs in return for the dropping of the tort action.
 

 [10]
 

 . The bankruptcy court’s memorandum did discuss the post-April 15 events. The court, however, was apparently doing so to support its findings that the Brodeurs acted in good faith.