In re Jacalyn S. NOSEK, Debtor.

Ameriquest Mortgage Company,
Appellant,

v.

Jacalyn S. Nosek, Appellee.

Civ.A. No. 06–40170–WGY.

United States District Court,
D. Massachusetts.

Nov. 13, 2006.

Jeffrey K. Garfinkle, Buchalter Nemer,
Irvine, CA, Robert F. Charlton, Jr., Ablitt

& Charlton, PC, Steven A. Ablitt, Ablitt & Caruolo, PC, Stoneham, MA, for Appellant.

Philip M. Stone, Worcester, MA, for Appellee.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

This is an appeal, brought under 28 U.S.C. § 158(a)(1), from an order entered by the Bankruptcy Court for the District of Massachusetts against Ameriquest Mortgage Company ("Ameriquest") assessing damages for violations of the Real Estate Settlement Procedures Act, the Massachusetts Consumer Protection Act, and the Massachusetts implied covenant of good faith and fair dealing. Ameriquest challenges the order, arguing, inter alia, that the Bankruptcy Code preempts recovery under all three claims. The debtor and appellee, Jacalyn S. Nosek ("Nosek"), opposes the appeal on the merits, but also brings a motion to dismiss, arguing that the Bankruptcy Court has not entered an appealable final judgment.

## II. BACKGROUND

### A. Undisputed Factual Background

The following facts are essentially undisputed or were found by the Bankruptcy Court and are not clearly erroneous. See Fed. R. Bank. P. 8013. On November 25, 1997, Nosek executed a $90,000 Adjustable Rate Note ("Note") in favor of the Ameriquest Mortgage Company and secured by a mortgage on her principal residence located in South Lancaster, Massachusetts, 01561. (R.[1] at 18.)

In 2000, Nosek began missing payments on the Note. (R. at 49.) In early 2001, Ameriquest began foreclosure proceedings on Nosek's residence. Id. As a result of the foreclosure proceedings, Nosek filed her first of three bankruptcies on May 15, 2001. (R. at 92.) The Bankruptcy Court dismissed this first case upon motion by the Chapter 13 Trustee (R. at 95.)

Nosek filed her second bankruptcy on February 28, 2002, in response to a second notice of foreclosure. (R. at 49–50, 102.) Once again, upon motion by the Chapter 13 Trustee, the Bankruptcy Court dismissed the case. (R. at 50, 102–03.)

On October 2, 2002, Nosek filed her third and current bankruptcy after receiving her third foreclosure notice. (R. at 50, 142.) In June 2003, Ameriquest and Nosek reached a stipulation agreement after Ameriquest filed a Motion for Relief from the Automatic Stay. (R. at 123–24.) The stipulation resulted from allegations by Ameriquest that Nosek had failed to make three post-petition payments (i.e. post bankruptcy petition) on the Note, specifically for December 1, 2002, January 1, 2002, and February 1, 2003 and that Nosek maintained a pre-petition arrearage of $19,789.14. (Case No. 02–46025, Mot. for Relief From Stay [Doc. No. 29] at 1, 2.) The stipulation required the payment of the regular post-petition payments, a payment of $384.89 to address the post-petition arrearage, and twelve equal; monthly payments to address attorney's fees and costs of $1,175. (R. at 123.) Nosek failed to make all the required payments. (See Case No. 02–46025, Certificate of Non-Compliance [Doc. No. 68] at 1, 2.)

On or about November, 2003, Nosek proposed her Second Amended Plan of

---

**1.** The citations to the Record refer to the Excerpts of the Record [Doc. No. 4] and the Supplemental Excerpts of the Record [Doc. No. 13] that were filed with this Court. The Excerpts and the Supplemental Excerpts are consecutively paginated and are both cited as R.

Reorganization (the "Plan"). (R. at 133.) Under the Plan, Nosek again agreed to pay the pre-petition arrearage, now calculated at $18,810.95, over sixty months in the amount of $313.52 per month. (R. at 134.)

On or about November/December 2003, Nosek sought to refinance her mortgage with another lender. (R. at 50–51.) In order to proceed, Nosek had to provide the new mortgage broker with a pay-off figure and a payment history from Ameriquest. (*Id.*) After providing written authorization, Nosek received a twelve-month payment history, beginning March 10, 2003 and ending May 4, 2004. (R. at 137–38.) The payment history provided the amount Ameriquest determined was owed on the Note, the dates that the payments were recorded, and the placement of each payment in an escrow account called "Suspense." (*Id.*) This "Suspense" account is understood as used to allow lenders to accept partial payments that would otherwise be returned to the debtor for failure to comply with contractual obligations. (R. at 52.) The Bankruptcy Court further explained that the account acts as a "collection bucket" to hold insufficient funds until they cumulatively equal a loan payment that is due. (*Id.*) This process did not distinguish between pre-petition or post-petition payments, but simply looked to satisfy the oldest payment first. (R. at 54.)

Nosek questioned the veracity of the accounting and the accounting practice through a Motion to Determine Amount of Liens filed on August 11, 2004. (R. at 142–45.) In this Motion, Nosek argued that all payments under the stipulation agreement were made in full. (R. at 143.) She also argued that significant discrepancies existed in the payment history regarding the actual amount due, finance charges assessed, and the accounting of certain payments. (R. at 144.) On September 8, 2005, the Bankruptcy Court ordered Ameriquest to provide a detailed accounting of the payments and to file a document explaining the basis and law behind the use of "Suspense" accounts. (Case No. 02–46025, Order for Accounting [Doc. No. 98] at 1.) Ameriquest failed fully to comply with this order and the Bankruptcy Court levied a $500 fine. (Case No. 02–46025, Order [Doc. No. 107] at 1.) Ameriquest finally responded with a memorandum detailing the use of "Suspense" accounts on November 9, 2005. (R. at 163–64.)

Nosek brought the underlying adversarial action asserting claims based upon Ameriquest's use of "Suspense" accounts and their alleged inability to apply, track, and credit payments made during the pendency of Nosek's Chapter 13 case. (R. at 5.)

**B. Procedural Background**

On December 2, 2004, Nosek commenced a lawsuit against Ameriquest in the United States Bankruptcy Court, District of Massachusetts, Western Division ( [Case No. 02–46025, Adversary Proceeding No. 04–04517, Doc. No. 1] ). Nosek brought seven claims: for violations of the (1) Truth in Lending Act ("TILA"); (2) Real Estate Settlement Procedures Act ("RESPA"); (3) Sections 2 and 9 of the Massachusetts Consumer Protection Act, chapter 93A of the Massachusetts General Laws; as well as state common law claims for (4) Unjust Enrichment; (5) Breach of Good Faith and Fair Dealing; (6) Infliction of Emotional Distress; and (7) Lost Income.

On October 25, 2005, the Bankruptcy Court allowed, in part, Nosek's motion for summary judgment and ruled that Ameriquest had violated section 2605 of RESPA (Count 2) and section 2(a) of Massachusetts General Laws, chapter 93A (Count

3). (R. at 165.) The Bankruptcy Court granted summary judgment on these two counts as to liability only and continued the matter for trial on damages. (*Id.*) The Bankruptcy Court denied the motion for summary judgment on the other counts. (*Id.*)

On June 30, 2006, after the conclusion of trial, the Bankruptcy court dismissed Counts One (TILA), Four (Unjust Enrichment), Six (Infliction of Emotional Distress); and Seven (Lost Income). (*Id.* at 83.) The court assessed nominal damages for the previously determined violations of Counts Two and Three by assessing $1 and $25 damages respectfully. (*See id.*) The Bankruptcy Court also found that Ameriquest violated the implied covenant of good faith and fair dealing and awarded damages of $250,000 for the resulting emotional distress. (*Id.*) The status of this determination as a final judgment is in dispute, and Nosek moves to dismiss this appeal.

Ameriquest filed with the bankruptcy court a timely Notice of Appeal on July 10, 2006. Ameriquest subsequently filed a Notice of Appeal with this Court [Doc. No. 1] on August 17, 2006 and filed its brief [Doc. No. 3] ("Appellant Br.") on September 14, 2006. Nosek responded with a brief in opposition to the appeal [Doc. No. 11] ("Appellee Br.") on September 29, 2006. Ameriquest filed a Reply [Doc. No. 12] ("Appellant Reply") to Nosek's brief in opposition on October 10, 2006.

Additionally, in response to the appeal, Nosek filed a Motion to Dismiss [Doc. No. 5] and a supporting Memorandum [Doc. No. 6] ("Appellee MTD Mem."). Ameriquest filed its Motion in Opposition to the Motion to Dismiss [Doc. No. 10] and a supporting Memorandum [Doc. No. 9] ("Appellant MTD Mem.") on September 28, 2006.

Having received memoranda from both parties on both the motion to dismiss and the merits of the appeal, this Court addresses the issues in that order.

## III. DISCUSSION

### A. Jurisdiction and Standards of Review

This Court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the Bankruptcy Court. 28 U.S.C. § 158(a)(1). On appeal from a decision of a Bankruptcy Court, this Court sits as an intermediate appellate court and addresses such actions "in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts. . . ." *Id.* § 158(c)(2); *see In re Ryan*, 282 B.R. 742, 747 (D.R.I.2002). As a result, a federal district court applies a "clearly erroneous" standard as to findings of fact, giving "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bank. P. 8013; *In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir.1992). The same clearly erroneous standard is applied to mixed questions of law and fact unless the bankruptcy court's analysis was "infected by legal error." *In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 73 (1st Cir.1995) (quoting *Williams v. Poulos*, 11 F.3d 271, 278 (1st Cir.1993)). In contrast, a *de novo* standard is applied with respect to conclusions of law. *In re LaRoche*, 969 F.2d at 1301.

As a preliminary matter, this Court must address Nosek's motion to dismiss. The motion to dismiss challenges the subject matter jurisdiction of this Court to review the appeal and is properly classified and analyzed under Federal Rule of Civil Procedure 12(b)(1). Since this motion does not challenge a holding of the Bankruptcy Court but raises an issue of law specific to the appeal, this Court reviews

the motion in accordance with the general rule for motions to dismiss. "In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the [non-moving party]." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). Such a motion should not be granted unless it appears that jurisdiction would be improper under any set of facts. *See Roma Constr. Co. v. aRusso,* 96 F.3d 566, 569 (1st Cir.1996) (analyzing a 12(b)(6) motion to dismiss); *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995) (reviewing a dismissal under 12(b)(1) in accordance with the same standard applied to a dismissal under 12(b)(6)).

### B. Nosek's Motion to Dismiss

Nosek challenges the jurisdiction of this Court by arguing that the Bankruptcy Judge either failed to or has not yet entered a final judgment in the underlying proceeding. (*See* Appellee MTD Mem. at 1–2, 8.) Specifically, Nosek argues that the Bankruptcy Court Order filed contemporaneously with, but separately from, the Memorandum of Decision on June 30, 2006 does not satisfy the "separate document" rule required by Federal Rule of Bankruptcy Procedure 9021 and its Federal Rule of Civil Procedure corollary, Rule 58. (*See id.* at 2–3.) In addition, even if the "separate document" rule is satisfied, Nosek argues that the judgment is not "final," and thus not ripe for appeal. (*See id.* at 3.)

Federal Rule of Bankruptcy Procedure 9021 requires that "[e]very judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document." Fed. R. Bank. P. 9021. This rule is derived from Federal Rule of Civil Procedure 58 that requires "[e]very judgment . . . must be set forth on a separate document." Fed.R.Civ.P. 58(a)(1). These rules are designed to eliminate uncertainty as to the finality of the judgment and to provide a clear date to start the clock running as to the time for appeal. *See Smith Corset Shops, Inc. v. Brodeur,* 696 F.2d 971, 975 (1st Cir.1982). Specifically, the "separate document" rule is intended to require the entry of a document separate from the opinion or memorandum of the court. *Id.;* Advisory Committee's Note to Rule 58. To accomplish this purpose, this rule must be mechanically applied. *Smith Corset Shops, Inc.,* 696 F.2d at 975.

Here, at the conclusion of the trial, the Bankruptcy Judge entered a Memorandum of Decision and an Order as two separate documents on the docket. (R. 47–83, 256.) The issue is whether the Order constitutes a judgment in satisfaction of the "separate document" rule. Nosek suggests that the answer is no because the Order states that "judgment *shall* enter," (Appellee MTD Mem. at 2), and argues that the use of this phrase implies that a separate entry of judgment would follow, (*see id.*).

■ Though the "separate document" rule will be applied mechanically, it will not be done hyper-technically. *See Smith Corset Shops, Inc.,* 696 F.2d at 975. There may be some traction to a suggestion that clarity counsels the use of the word "Judgment" to title such a document rather than "Order," but Bankruptcy Rule 9021 and Civil Procedure Rule 58 focus on the document's function, not on the specific title. This is supported by the definition of the word "Judgment" found in Federal Rule of Civil Procedure 54(a), which states that " 'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed.R.Civ.P. 54(a). The effect and not the specific word is, therefore, the focus. The document entered

and titled as "Order" satisfies this definition of a "judgment." *See id.*

The use of the phrase, "ORDERED that judgment shall enter as follows," found in the Order does not imply that a further document will be entered, but that the brief, un-cited list following the phrase constitutes the judgment of the court. The Advisory Committee's Note to Rule 58 explains the required elements of a "separate document" as one that "recites the terms of the judgment without offering additional explanations or citation of authority" and cites Forms 31 and 32 as examples. Advisory Committee's Note to Rule 58. The Order entered accomplishes this purpose. It mirrors the Forms cited as sufficient examples. (*See* R. at 256.) Additionally, it is separate from the Memorandum of Opinion. *See id.; Smith Corset Shops, Inc.,* 696 F.2d at 975 (holding the "separate document" rule violated when the alleged judgment was included with the memorandum and order of the court). If not entered as the judgment of the court, it serves no other purpose. As a result, the Order constitutes a separate document that satisfies Bankruptcy Rule 9021 and Federal Rule of Civil Procedure 58.

Nosek's second argument is that the Order cannot be final because the award of attorney's fees and costs was not finalized and determined at the time of appeal. (*See* Appellee MTD Mem. at 1.) Nosek argues that the lack of a final determination concerning attorney's fees and costs presents a claim not yet adjudicated and renders the underlying suit open and not yet appealable under Federal Rule of Civil Procedure 54(b). (*See id.* at 5–9.)

■ This appeal does not, however, ask this Court to review a partial judgment. A judgment may be final even when a motion for attorney's fees remains to be resolved. *See Osterneck v. Ernst & Whin-*

*ney,* 489 U.S. 169, 175, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). The rationale underlying this rule is that "a request for attorney's fees is not part of the merits of the underlying action because such fees are not part of the compensation for the plaintiff's injury but traditionally have been regarded as an element of costs awarded to the prevailing party." *Id.; Budinich v. Becton Dickinson and Co.,* 486 U.S. 196, 202, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) ("[A]n unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final."). The proper inquiry, therefore, is whether after the entry of the Order any issues central to the litigation remain. *In re Bank of New England Corp.,* 218 B.R. 643, 646 (1st Cir.BAP1998); *Cf. Green Tree Financial Corp.—Alabama v. Randolph,* 531 U.S. 79, 84, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (determining a final judgment in the context of the claim under the Federal Arbitration Act).

■ Here, the Bankruptcy Judge disposed of each of the seven counts in the complaint and assessed damages in his June 30, 2006 Order. (R. at 256.) This Order did not present an interlocutory order or one that was "tentative, informal or incomplete." *See In re Bank of New England,* 218 B.R. at 644 (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545–46, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). As a result of the complete disposition of all counts and the inability to argue that a pending determination of attorney's fees and costs constitutes an unresolved claim, this Court holds that a final judgment entered and that a proper appeal followed. Nosek's motion to dismiss is, therefore, denied, and the merits of the appeal will be addressed.

## C. Bankruptcy Code Preemption

Ameriquest appeals the adverse rulings of the Bankruptcy Court that found viola-

tions of the Real Estate Procedures Act ("RESPA"), 12 U.S.C. § 2605, the Massachusetts Consumer Protection Act, Mass. Gen. Laws. ch. 93A, and the Massachusetts common law implied covenant of good faith and fair dealing. Ameriquest raises a threshold—and ultimately determinative—argument that recovery under all three claims is preempted or precluded by the Bankruptcy Code. (*See* Appellant Br. at 17–21, 37–40, 43–45.) Because this Court agrees that the two contested claims addressed on the merits by the Bankruptcy Judge are preempted, only the preemption issue as to each claim is addressed.

### 1. Implied Covenant of Good Faith and Fair Dealing

Ameriquest first argues that the Bankruptcy Code ("the Code") preempts any state law cause of action based upon an implied covenant of good faith and fair dealing. (*Id.* at 17.) Specifically, Ameriquest argues that the Bankruptcy Code provides a comprehensive statutory scheme that governs the relationship between Ameriquest as creditor and Nosek as debtor under the Plan. (*Id.* at 19.) Under this argument, a state law claim that seeks to redress a breach of the Plan under a state contract theory is preempted by the Code. (*See id.* at 17–19.)

A preemption analysis begins by categorizing and understanding the type of preemption at issue. The Supreme Court, in *Gade v. National Solid Wastes Management Ass'n*, detailed the three types of preemption: (1) explicit preemptive language; (2) a pervasive federal regulation that left no room for state law; and (3) conflicting requirements that impede the full purposes and objectives of the federal law. 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). The last two types of preemption properly are viewed under the umbrella category of implied preemption. (*See id.*) In every preemption case, "[t]he purpose of Congress is the ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). In divining the Congressional purpose, however, due respect to the historic and often autonomous role of the state counsels a narrow construction and application of a preemptive purpose. *Id.*

Ameriquest advances its preemption argument under the second category, arguing for implied preemption based upon a pervasive federal scheme. (*See* Appellant Br. at 17, 21.) Ameriquest asserts that this federal scheme creates the legal construct of the Plan, Appellant Reply at 3, and completely governs the relationship and remedies under the Plan through its statutory dictates and regulations. (*see* Appellant Br. at 17.)

The Court of Appeals for the First Circuit, in *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, recognized that "states may not pass or enforce laws to interfere with or compliment the Bankruptcy Act or to provide additional or auxiliary regulations." 164 F.3d 677, 682–83 (1st Cir.1999) (quoting *International Shoe v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 73 L.Ed. 318 (1929)). State law, therefore, may not overlap or conflict with a remedial structure provided for in the Code. *See id.* at 683. Applying this logic, the First Circuit, in *Bessette v. Avco Fin. Servs., Inc.*, held that state law remedies for unjust enrichment were preempted because violations of section 524 of the Bankruptcy Code were enforceable under section 105. 230 F.3d 439, 447 (1st Cir.2000). After *Bessette*, federal preemption will be found if a remedial measure under the Code can be identified and if the state cause of action either overlaps or adds to such measure. *See id.*

In this case, the Bankruptcy Court found a violation of the implied covenant of good faith and fair dealing due to Ameriquest's alleged inability to "distinguish between pre-petition and post-petition payments made by [Nosek]" and Ameriquest's "inability to promptly credit [Nosek's] account from the suspense account." (R. at 69.) The court found that the failure to distinguish between pre-petition and post-petition payments violated 11 U.S.C. section 1322(b) of the Code that "provides for the curing of any default over the course of the [P]lan." (*Id.*) The court found that this practice "contradicts the purpose of a Chapter 13 plan." (*Id.* at 76.)

■ The analysis followed in *Bessette* is applicable in this case. The Bankruptcy Court found a violation of 11 U.S.C. section 1322(b), which regulates the modification of the Plan and provides the cures for any defaults. 11 U.S.C. § 1322; (*see* R. 69.) The Bankruptcy Court then grafted onto the Plan an implied covenant of good faith and fair dealing, a state remedy. (*See* R. at 69.) This was error.

Section 105 of the Code provides the proper mechanism for the Bankruptcy Court to remedy specific violations of the Code.[2] *See Bessette*, 230 F.3d at 447. If the Bankruptcy Court is to assess damages, it must not look to the state law theory employed in this case, but must do so under the equitable powers granted under the Code. *See id.* The state law remedy in this case overlaps the remedial measures provided for in the Code and is, therefore, preempted. *See In re Weinstein*, 164 F.3d at 683. A contrary ruling would allow a state remedy to superimpose itself on activities that are closely related to and governed by the management of the bankruptcy process.

## 2. Real Estate Procedures Act

Ameriquest also argues that the general preemption principles described above apply to the alleged violation of RESPA. (Appellant Br. 37–41.) RESPA is a federal consumer protection act that requires any servicer of a federally related mortgage loan to respond to a request from the borrower for information concerning the servicing of the loan. 12 U.S.C. § 2605(e). Ameriquest argues that the Code provides the sole statutory remedy for a borrower to seek such information when related to an ongoing bankruptcy proceeding. (Appellant Br. 37–38.) Following this logic, Nosek could not use the dispute resolution provisions of RESPA to resolve disagreements over the amount of Ameriquest's claim under the Plan. (*Id.* at 37.)

This argument relies, as does the preemption argument above, on a theory of implied preemption, but it more closely relates to a theory of conflict preemption since the Code provides for a remedial measure similar in purpose but different in form. (*See id.* at 39–41.) In addition, Ameriquest cannot proffer an argument that RESPA is entirely preempted by the Code because RESPA anticipates an interaction and co-existence with the Code in certain respects. *See* 12 U.S.C. §§ 2605(b), (c), (i) (providing explicit exceptions for when bankruptcy proceedings have commenced).

Instead, the preemption question here turns on whether the Code provides a remedial procedure inconsistent with RES-

---

**2.** "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any .determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

PA. Under RESPA, the servicer of the loan must respond to a qualified demand letter from the borrower within 20 days. *Id.* § 2605(e). This section has no explicit exception for bankruptcy proceedings. *See id.* Under the Code and under the bankruptcy rules, however, a different process exists to determine the propriety of claims and to resolve disputes. Section 502 of the Code allows for a proof of claim to be determined true, absent objection by the opposing party. 11 U.S.C. § 502(a). If an objection is registered, the Code entrusts the Bankruptcy Court with the role of determining the proper amount of the claim. *Id.* § 502(b), (c). In addition, Federal Bankruptcy Rule of Procedure 3007 provides for objections to claims in a manner similar to RESPA. *See* Fed. Bank. R.P. 3007. Under Bankruptcy Rule 3007, an objection to a claim must be in writing and filed at least 30 days prior to the hearing. *Id.*

The facts of this case show how the overlap of these procedures may occur. Nosek sent what the Bankruptcy Court found to be a qualified demand letter under RESPA on July 23, 2004. (R. at 57.) Under RESPA, and outside of the bankruptcy proceeding context, Ameriquest would have had 20 days to reply to this demand letter. 12 U.S.C. §§ 2605(e). Nosek also filed with the Bankruptcy Court a Motion to Determine Amount of Liens on August 11, 2004. (R. at 142–45.) This motion was filed before the RESPA safe harbor time-frame had expired and sought to have the Bankruptcy Court determine the amount owed. (*See* R. at 142.) The Bankruptcy Court proceedings that followed sought to address the disputed claims, and the subsequent adversarial action raised many of the same claims asserted in the motion. (*See* R. at 142–45.) In this case, both the remedial procedures in RESPA and the Motion to Determine Amount of Liens in the bankruptcy pro-

ceeding sought to achieve the same effect—the resolution of disputed claims—but through different remedial vehicles.

Thus, the purposes of the Code in determining the disputed claims within the structure of the Bankruptcy Court conflict with RESPA's requirements. Ameriquest analogizes this situation to a Ninth Circuit case, *Walls v. Wells Fargo Bank, N.A.*, where the court noted the Fair Debt Collection Practices Act preempted by the Bankruptcy Code. 276 F.3d 502, 510 (9th Cir.2002). The court in *Walls* held that the Code provides its own remedy for violating section 524 (Effect of Discharge) through the civil contempt statute section 105. *Id.*

■ In this case, the Bankruptcy Judge dismissed this analogy summarily simply by stating that "[i]n the instant case the Plaintiff has not yet received a discharge." *In re Nosek*, 2006 WL 2700792, slip. op., *4 (Bankr.D.Mass. September 19, 2006). The status of being discharged from a bankruptcy proceeding or currently embroiled in one does not, however, appear to be a valid distinguishing fact. Instead, *Walls* stands for the proposition that where the remedial scheme in the Code conflicts with a remedial scheme of a separate statute, the former must occupy the field of bankruptcy proceedings rather than the latter. *See* 276 F.3d at 510. This Court finds that proposition persuasive in the instant case.

As a result, the Code's claim resolution process for ongoing bankruptcy proceedings trumps the alternative remedial procedure found in RESPA.

### 3. Massachusetts Consumer Protection Act, M.G.L., c. 93A

Finally, Ameriquest argues that the state law claim under Massachusetts General Law chapter 93A ought be preempted according to the same logic and analysis

undergirding the preemption of the implied covenant of good faith and fair dealing. (Appellee Mem. at 43–45.) Prudential and comity concerns counsel against going so far.

The Bankruptcy Court held that the violation of RESPA constituted a *per se* violation of chapter 93A. (R. at 63.) Under 940 Code of Massachusetts Regulations § 3.16(4), a violation of chapter 93A occurs automatically if a violation of a federal consumer protection statute is found. 940 Mass.Code. Regs. 3.16(4) (2006). While the Bankruptcy Court correctly applied Massachusetts law, the preemption of the underlying RESPA claim requires reconsideration of the chapter 93A claim. The Massachusetts General Law chapter 93A claim is, therefore, remanded to the Bankruptcy Court for reconsideration as to whether the Bankruptcy Code preempts such state claims and, if that court answers in the negative, for a determination of the claim on the merits.

## IV. CONCLUSION

For the reasons stated above, this Court holds that the Bankruptcy Code preempts both the state claim under the implied covenant of good faith and fair dealing and the claim under section 2605(e) of the Real Estate Settlement Procedures Act. In addition, the claim under Massachusetts General Laws, chapter 93A is remanded for consideration on the merits. Accordingly, Ameriquest's Appeal [Docket No. 1] is ALLOWED and the case is remanded for further proceedings consistent with this holding.

SO ORDERED.