# United States Court of Appeals

## For the First Circuit

No. 09-1806

IN RE: JACALYN S. NOSEK

Debtor.

_____

AMERIQUEST MORTGAGE COMPANY,

Appellant,

v.

JACALYN S. NOSEK,

Nominal Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before
Boudin, Circuit Judge,
Souter,* Associate Justice,
and Howard, Circuit Judge.

William F. Sheehan with whom Daniel M. Glosband, Richard A. Oetheimer and Goodwin Procter LLP were on brief for appellant.

June 14, 2010

---

*The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**BOUDIN**, **Circuit Judge**.  This case is an appeal from a $250,000 sanction issued sua sponte by a bankruptcy judge against Ameriquest Mortgage Co.  In late 1997, Ameriquest provided a loan to Jacalyn Nosek in the amount of $90,000, and it took back a mortgage in that amount on her home in Massachusetts.  Ameriquest subsequently assigned the mortgage to a securitization trust for which Norwest Bank, Minnesota, N.A., acted as trustee.  Under the assignment's terms, Ameriquest remained obligated to service the loan and continued to deal with Nosek in this capacity until it assigned that task to another entity in March 2005.[1]

During 2000, Nosek began to fall behind in her payments.  Norwest began a foreclosure action against her in Massachusetts Land Court, identifying her as the subject of the mortgage "given . . . to Ameriquest . . . and now held by the plaintiff [Norwest] by assignment."  Nosek then petitioned for bankruptcy, but this petition was dismissed, as was a second petition filed in early 2002.  A third was filed in October 2002 and served on both Norwest

---

[1]Ameriquest's practices appear to have been less than exemplary.  Eventually it agreed to pay a very large settlement to dispose of state investigations into its practices and announced it would be closing its retail offices.  See Mortgage Lender to Consolidate, Associated Press, May 3, 2006, available at http://www.nytimes.com/2006/05/03/business/03quest.html (last visited June 2, 2010); Ameriquest to Pay $325 Million in a Settlement Over Lending, N.Y. Times, Jan. 21, 2006, available at http://www.nytimes.com/2006/01/21/business/21lend.html (last visited June 2, 2010).

(listed as holding the mortgage) and Ameriquest (listed beneath as "Representing: Norwest Bank Minnesota").

Ameriquest filed a proof of claim in its own name and, in February 2003, moved for relief from automatic stay, 11 U.S.C. § 362(a) (2006), stating in its motion that it was "the holder of a first mortgage" on the debtor's property. Under its service agreement with Norwest, Ameriquest arguably had power to file the proof of claim and to seek relief from the stay in its own name;[2] but Ameriquest did not then hold the mortgage and did not identify in its motion the source of its authority to act for Norwest. Of course, Ameriquest's records should have led it to reveal that it was now merely an agent; but so, too, Nosek had been told of and acknowledged the assignment. Mistakes in records and memory do occur, and there has been no proof of bad faith on either side.

In December 2004, Nosek countered with an adversary proceeding in the bankruptcy court alleging, among other things, that Ameriquest had mishandled accounting for her mortgage payments during her bankruptcy. The bankruptcy court awarded her $250,000 in damages for emotional distress, was reversed on appeal by the

---

[2]Suits by servicers acting on behalf of holders are commonplace. See, e.g., Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 857, 861 (9th Cir. 2008); Bankers Trust (Del.) v. 236 Beltway Inv., 865 F. Supp. 1186, 1191 (E.D. Va. 1994); In re Woodberry, 383 B.R. 373, 379 (Bankr. D.S.C. 2008); Greer v. O'Dell (In re O'Dell), 268 B.R. 607, 610-11, 618 (N.D. Ala. 2001), aff'd, 305 F.3d 1297, 1302-03 (11th Cir. 2002); Twomey, Deciphering Mortgage Proofs of Claim, 27 Am. Bankr. Inst. J. 1, 52 (Nov. 2008).

district court, Ameriquest Mortgage Co. v. Nosek (In re Nosek), 354 B.R. 331, 334, 340 (D. Mass. 2006), and on remand awarded the same damages on another theory, adding $500,000 in punitive damages, Ameriquest Mortgage Co. v. Nosek (In re Nosek), 363 B.R. 643, 648-49 (Bankr. D. Mass. 2007). The district court upheld this judgment and was later reversed. Ameriquest Mortgage Co. v. Nosek (In re Nosek), 544 F.3d 34, 42, 49-50 (1st Cir. 2008).

Before Nosek's judgment against Ameriquest was undone by this court, Nosek, on July 27, 2007, filed a separate lawsuit in bankruptcy court against Ameriquest seeking to collect on her $750,000 judgment. In response, Ameriquest filed an affidavit stating that it did not hold the mortgage. Counsel for Nosek stated at a hearing shortly thereafter that the affidavit was the first time that Ameriquest had disclosed that it was acting as an agent and was not in fact the holder of the mortgage. This is so only in the literal sense that Norwest's role as the holder by assignment had been disclosed much earlier by Norwest itself rather than Ameriquest.

On January 25, 2008, the bankruptcy court ordered Ameriquest to show cause why sanctions should not be imposed under Federal Rule of Bankruptcy Procedure 9011 for misrepresenting during the Nosek bankruptcy proceedings that Ameriquest was the

holder of the mortgage.[3]  Ameriquest conceded that it had not accurately described its status but argued that Nosek had been aware of the sale of her mortgage to Norwest, that Ameriquest had the authority to act under its own name, that it had not intended to mislead or conceal anything, and that Nosek had not been prejudiced.

In April 2008, the bankruptcy court rejected these arguments and imposed a total of $650,000 in Rule 9011 sanctions against Ameriquest, Norwest and Ameriquest's counsel.  Of that amount, $250,000 was assessed against Ameriquest itself.  The district court upheld the sanctions against Ameriquest on May 26, 2009, finding that "[a]lthough [Ameriquest's] misrepresentation did not affect the outcome of this case, the Bankruptcy Court did not abuse its discretion in sanctioning Ameriquest."  Ameriquest now appeals from the sanction order against it.

Federal Rule of Bankruptcy Procedure 9011(b)(3) provides that

> [b]y presenting to the court . . . a petition,
> pleading, written motion, or other paper, an
> attorney or unrepresented party is certifying

---

[3]The bankruptcy court took issue with several filings, including Ameriquest's 2003 proof of claim, which attached the note and mortgage without any reference to the assignment and failed to include a copy of Ameriquest's power of attorney.  Pleadings filed elsewhere in the course of litigation were similarly flawed: for example, a pleading filed in 2003 stated that Ameriquest was "the holder of [Nosek's] first mortgage," and an answer it filed in 2005 admitted the allegation made by Nosek that Ameriquest was the holder of her mortgage.

that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

If the court determines that a violation of this provision has occurred after issuing a show cause order, "the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated [it] or are responsible for its violation." Fed. R. Bankr. P. 9011(c).

Ameriquest more or less admits that it violated Rule 9011, acknowledging in its brief "that its Proof of Claim and Motion for Relief from Stay should have done more to describe its representative capacity," but it argues that the $250,000 sanction was unreasonable. Although the bankruptcy judge has broad discretion in setting sanctions, Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 403 (1st Cir. 2002), deference "is not to be confused with automatic acquiescence," United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir. 1993), and (among other reasons for reversal) a reviewing court can find a sanction unreasonable in itself or in amount.[4]

_____

[4]Abuse of discretion may be found when "a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." United States v.

Both Rule 9011 of the bankruptcy court and its district court Rule 11 counterpart say that sanctions must be limited to what is sufficient to deter repetition of the offending conduct or comparable conduct by others. Fed. R. Bankr. P. 9011(c)(2); Fed. R. Civ. P. 11(c)(4). The 1993 Advisory Committee notes to Rule 11, helpful in construing Rule 9011, see Featherson v. Goldman (In re D.C. Sullivan Co.), 843 F.2d 596, 598 (1st Cir. 1988), offer a non-exhaustive list of factors helpful in making this determination:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants.

As the bankruptcy court noted, "the parties' confusion and lack of knowledge, or perhaps sloppiness, as to their roles is not unique in the residential mortgage industry." Studies have shown that mortgage holders and servicers routinely file inaccurate claims, some of which may not be lawful. See Porter, Misbehavior and Mistake in Bankruptcy Mortgage Claims, 87 Tex. L. Rev. 121, 123-24 (2008). Bankruptcy courts have a legitimate interest in

Roberts, 978 F.2d 17, 21 (1st Cir. 1992).

-7-

policing the filings submitted, and sanctions can sometimes serve a useful function in this endeavor. Steep sanctions might be appropriate were a lender shown to have routinely misrepresented its role in bankruptcy cases, caused unnecessary litigation, or prejudiced another party.

But even with these concerns in mind, the sanction in this case is excessive when considering factors like those listed in the advisory committee's notes to Federal Rule of Civil Procedure 11. First, nothing indicates that Ameriquest's claim that it was the holder of the mortgage was a deliberate falsehood or intended in any way to mislead the court or Nosek or achieve anything for Ameriquest. Arguably, Ameriquest was entitled to file a claim in Nosek's bankruptcy and seek relief in its own name--we need not resolve this issue--and so could sue "as if" it were the mortgage holder, but, in the event that its authority for this had been challenged and the challenge upheld, the trustee could readily have been substituted or begun its own suit.

The bankruptcy court said that "[i]ntent is irrelevant" because "the [Rule 9011] standard to be applied is an objective one." Accuracy of representations is an objective matter, as is the reasonableness of any inquiry actually made. But subjective intent can bear on whether to impose a sanction and what amount to fix. Lieb v. Topstone Indus., 788 F.2d 151, 157-58 (3d Cir. 1986); Joseph, Sanctions: The Federal Law of Litigation Abuse § 16(D)(2)

at 2-280 (4th ed. 2008).  Even a dog, said Holmes, distinguishes between being kicked and being stumbled over.  O.W. Holmes, The Common Law 3 (1881).

Further, the bankruptcy court has not identified any actual prejudice from the inaccurate claim of holder status, nor has Nosek  done so. In Nosek's separate 2007 law suit seeking to collect her (later vacated) damage award against Ameriquest, it could well have mattered whether Ameriquest was or was not the holder of the mortgage.[5]  But Nosek eventually amended her complaint so as to include Norwest, mitigating any risk that the funds could escape capture.  And, in the end, the damages judgment was vacated by this court so Ameriquest's delayed revelation had no ultimate consequence.

There are indications elsewhere that Ameriquest's record has been less than exemplary (see note 1, above) but the sanction did not purport to rest on any overall pattern, but merely on the claims of ownership of Nosak's mortgage, admittedly repeated but still the same error.  Ameriquest's delay in acknowledging that Norwest was the mortgage owner could in certain scenarios have caused prejudice to Nosek in attempting to recover damages for the

---

[5]In that suit Nosek sought to attach mortgage payments owed to Norwest but flowing through Ameriquest, and this request made it in Ameriquest's interest to correct the error: as a servicer, Ameriquest held no interest in the mortgage payments it collected for Norwest, and those payments could not be reached to satisfy the judgment that ran against Ameriquest.

alleged mishandling of payments; but in fact the award was itself vacated. In any event, the justification for a sanction here rested on deterrence.

If a modest sanction had been imposed to vindicate Rule 9011 and "pour encourager les autres," no appellate court would fuss, but $250,000 is not reasonable under the present facts. The bankruptcy judge who imposed the sanction and was familiar with the matter is no longer on the bench, precluding a remand to allow the judge who actually presided to re-calibrate the sanction. We modify the sanction award against Ameriquest to $5,000, taking account of legal fees now incurred on two appeals, and otherwise affirm.

It is so ordered.