**In the Matter of Dale Thomas LASKOWSKI, Debtor.**

**Debra L. Miller, Trustee, and Dale Thomas Laskowski, Plaintiffs,**

v.

**Ameriquest Mortgage Company, Defendant.**

**Bankruptcy No. 01–35157 HCD. Adversary No. 07–3047.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Feb. 27, 2008.

Debra L. Miller, South Bend, IN, Standing Chapter 13 Trustee.

Dale Thomas Laskowski, South Bend, IN, pro se.

Jeffrey K. Garfinkle, Esq., Buchalter Nemer, P.C., Irvine, CA, and R. William Jonas, Jr., Esq., Hammerschmidt, Amaral & Jonas, South Bend, IN, for Defendant.

*MEMORANDUM OF DECISION*

HARRY C. DEES, JR., Chief Judge.

This adversary proceeding was initiated by the Complaint Seeking Damages in Core Adversary Proceeding ("Complaint") filed by Debra L. Miller, Chapter 13 Trustee ("Trustee"), and Dale Thomas Laskowski, chapter 13 debtor ("debtor"), against Ameriquest Mortgage Company ("Ameriquest"), defendant herein. Presently before the court is Ameriquest's Motion to Dismiss. After considering the motion, briefs, memoranda and responses of the parties, the court took the matter under advisement. For the reasons that follow, the court denies Ameriquest's Motion to Dismiss.

*Jurisdiction*

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana Local Rule 200. 1, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(A) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014. Any conclusion of law more properly classified as a factual finding shall be deemed a fact, and any finding of fact more properly classified as a legal conclusion shall be deemed a conclusion of law.

*Background*

On October 19, 2000, Dale Thomas Laskowski purchased a home on Brookfield Street in South Bend, Indiana. Ameriquest holds the mortgage and note in the amount of $44,250.00, plus interest at an adjustable rate (beginning at 10.4%). *See* R. 1, Ex. A (Mortgage, Adjustable Rate Note, Adjustable Rate Rider). After not making the monthly payments in August, September, and October 2001, the debtor filed a voluntary chapter 13 petition on October 16, 2001. Ameriquest submitted a proof of claim stating that the principal balance on the mortgage was $44,100.88 and that the pre-petition arrearage owed on the mortgage was $1,505.64. *See id.,* Ex. A (Proof of Claim).

The debtor filed his chapter 13 plan on November 1, 2001. The Plan requires the Trustee to make monthly payments to Ameriquest in the amount of $401.47 (to cover the mortgage principal and interest) and $86.72 (to place in escrow for taxes and insurance). It also provides for the curing of pre-petition arrearages. Article III of the Plan states:

> If, during the life of this Plan, such payments must be modified due to a change in escrow reserve requirements, the creditor shall provide notice thereof

to the debtor and/or Standing Chapter 13 Trustee and/or counsel for the debtor. Thereafter, absent any objection made within thirty (30) days of such notice, the Trustee shall modify disbursement to the creditor.

R. 1, ¶ 32 (quoting Plan provision). No creditor objected to confirmation of the Plan. It was confirmed by special order on July 17, 2002.

The Trustee stated in the Complaint that her first post-petition adequate protection payment, made January 31, 2002, was sufficient to pay in full the November 2001, December 2001, January 2002, and February 2002 mortgage payments, making the debtor current on his mortgage. *See* R. 1, ¶ 36. On August 1, 2002, the Trustee completed paying the pre-petition mortgage arrearage claim in full. *See id.*, ¶ 38.

The Trustee reported numerous communications between Ameriquest and her office. On November 10, 2005, and May 3, 2006, for example, her office was notified when the adjustable rate mortgage payment changed. *See id.*, ¶¶ 40, 42. On another occasion, Ameriquest employee Saline notified the Trustee's office that the mortgage was overpaid. On October 20, 2004, Saline advised the Trustee's office

that the next mortgage payment was due January 1, 2005, and that Ameriquest would return the overpayment being held in a suspense account. On January 10, 2005, the Trustee's office received a refund from Ameriquest of $2,868.37. *See id.*, ¶¶ 39, 41.

In October 2006, the Trustee's office determined that the debtor's chapter 13 Plan payments had been completed and that there were sufficient funds to pay all unsecured creditors in full. The Trustee's office followed its standard procedure of verifying that the mortgage was current and of resolving any outstanding debts for fees, costs, or other escrowed amounts. By certified mail, it sent a Qualified Written Request ("QWR") to Ameriquest's bankruptcy department headquarters in Orange, California, to obtain a final accounting.[1] Although Rose Karlsson of Ameriquest signed for the certified, return receipt QWR letter on October 13, 2006, Ameriquest neither responded to acknowledge receipt of the correspondence within 20 days nor provided any explanation of the debtor's account questions within 60 days, as required under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).[2] *See id.*, ¶¶ 43–50.

[1]. A "qualified written request" ("QWR") is a legal term of art found in the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* It is "a written correspondence ... that (i) includes ... the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). In addition, § 2605(e) requires that "any servicer of a federally related mortgage loan" which receives a QWR from the borrower or its agent "shall provide a written response acknowledging receipt of the correspondence within 20 days" and shall "make appropriate corrections" to the borrower's account or "provide

the borrower with a written explanation" within 60 days. 12 U.S.C. § 2605(e)(1)(A), (e)(2).

[2]. The Real Estate Settlement Procedures Act ("RESPA") is a federal statute enacted to provide consumers "with greater and more timely information on the nature and costs of the settlement process" and to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). Its purpose is "to effect certain changes in the settlement process for residential real estate that will result" in better disclosure of settlement costs to home buyers and sellers, elimination of kickbacks, reduction in amounts escrowed for payment of taxes and insurance, and other reforms.

Six months later, on April 10, 2007, the Trustee's office notified Ameriquest by email that it had failed to provide the information requested in the QWR. On April 20, 2007, William Smith, Bankruptcy Specialist for Ameriquest, responded by email that its records showed $519.00 in outstanding postpetition fees, costs, or advances; $3,874.15 owed in the escrow account; and a total of $3,953.10 due to bring the account current. Smith also provided a full history of the changes in mortgage payments. *See id.*, ¶¶ 51–52. When the Trustee's office requested specific information concerning the fees, taxes, and insurance paid from the escrow account, Smith sent it. The Trustee then asked why there was outstanding escrow and why the monthly escrow amounts were not changed during the course of the bankruptcy proceeding. She provided Smith with her office's disbursement ledger and requested the company's procedures in handling escrow accounts.

On May 8, 2007, Ameriquest's Bankruptcy Specialist Smith responded that he would be filing an administrative claim for the post-petition items. *See id.*, ¶¶ 53–57. Smith also stated: "With respect to the escrow shortage on the Laskowski's account, it is AMC Mortgage Services policy not to analyze accounts when in Bankruptcy as to prevent double dipping." *See id.*,

¶ 57 (quoting Ex. L). The Trustee then prepared an excel spread sheet demonstrating the Trustee's payments to Ameriquest on behalf of the debtor: the principal and interest due, the amounts refunded to the Trustee, the amounts contributed monthly to escrow, and the payments of taxes, insurance and other costs listed in Smith's email. *See id.*, ¶ 58. On May 9, 2007, the Trustee filed the Complaint initiating this adversary proceeding.

The Complaint alleged that Ameriquest is a "servicer of a federally related mortgage loan" under RESPA, *see* 12 U.S.C. § 2602, and that it violated RESPA by failing to acknowledge the QWR within 20 business days of receipt and by failing to provide the information requested by the Trustee's office within 60 business days of receipt. *See* 12 U.S.C. § 2605(e)(1)(A); § 2605(e)(1)(B)(2); 12 U.S.C. Regulation X, 24 CFR § 3500.21.[3] The Complaint charged that the defendant was liable for actual damages, costs and reasonable attorney fees. It also alleged that the delays caused the debtor to remain in bankruptcy, unable to refinance his house, obtain credit, obtain a discharge, or disburse the funds held by the Trustee. Furthermore, it claimed that the delays caused the Trustee and her staff hours of additional work.[4] *See id.*, ¶¶ 59–65.

*Id.*, § 2601(b); *See Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 191 (S.D.Tex.2007).

> The Real Estate Settlement Procedures Act ("RESPA") imposes a duty upon loan servicers to respond to certain borrower inquiries. The Act provides for individual causes of action and "allows for actual damages, as well as statutory damages upon a showing of a pattern or practice of noncompliance with the duty to respond to borrower inquiries."

*Hopkins v. First NLC Fin'l Servs, LLC (In re Hopkins)*, 372 B.R. 734, 746 (Bankr.E.D.Pa. 2007) (citation omitted).

**3.** The Department of Housing and Urban Development promulgated Regulation X as the method for implementing RESPA. *See* 12 U.S.C. Regulation X, 24 CFR § 3500.21. The provisions of 24 CFR § 3500.21(e) and (f) are identical in their language to 12 U.S.C. § 2605(e) and (f).

**4.** In its prayer for relief, the Complaint reiterated that the delays caused substantial harm to the debtor, who was required to remain in bankruptcy, and to the Trustee and her staff in their attempt to resolve the issue. It sought actual damages, contractual damages, statutory damages under RESPA, reasonable legal fees and costs, and the maximum statu-

The Complaint's Second Claim alleged that Ameriquest, by not accounting for the debtor's post-petition payments, failed to abide by the terms of the debtor's confirmed chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(5). *See id.*, ¶¶ 66–75. Its Third Claim charged that Ameriquest failed to conduct an annual escrow account analysis and to notify the debtor if a surplus, shortage, or deficiency existed in the escrow account, as required under RESPA and under the mortgage contract between Ameriquest and the debtor-borrower. *See id.*, ¶ 81. In its Fourth Claim for relief, a breach of contract charge, the Complaint alleged that Ameriquest breached the implied covenant of good faith and fair dealing by failing to account for and to credit the Trustee's timely payments on the debtor's mortgage. *See id.*, ¶¶ 85–91.

On July 9, 2007, Ameriquest filed a Motion to Dismiss pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6). *See* R. 9. It pointed out in its memorandum in support of the motion that the debtor, a named plaintiff in this lawsuit, neither signed the complaint nor communicated with Ameriquest. The defendant alleged that the Trustee had no legal authority to represent the debtor in this matter. It also asserted that the Trustee incorrectly believed that Ameriquest was not entitled to hold a post-petition claim for taxes and insurance that it paid when the debtor failed to do so.

The defendant stated that the debtor owed three outstanding loan payments and two late charges in the amount of $1,505.64. Ameriquest explained that, under the terms of the loan documents, the

tory civil penalties allowed under the Bankruptcy Code. It further asked the court to order Ameriquest (1) to perform an annual escrow analysis on all mortgages currently serviced by Ameriquest that are in a chapter

debtor also remained responsible for paying the property taxes and insurance. *See* R. 10 at 2–3 (citing Mtg. §§ 4, 5). According to Ameriquest, the amount of the taxes and hazard insurance cost increased each year, but the debtor's post-petition mortgage and escrow payments were not increased to reflect those corresponding increases.

Ameriquest admitted that it remitted to the Trustee $2,868.37 on January 10, 2005, but insisted that the payment was "an inadvertent error." R. 10 at 4. As the defendant explained, the "facts will establish that[,] rather than excess amounts in the escrow account, the debtor owed Ameriquest." *Id.* The defendant accepted as true the Complaint's factual account that the Trustee sent it a QWR letter on October 9, 2006, asking for verification that the debtor was contractually current with his mortgage. On April 10, 2007, a representative of the defendant responded; he provided an accounting which showed that the debtor still owed $3,953.10 for taxes, insurance, and other post-petition advances paid by Ameriquest.

The defendant moved to dismiss the Trustee's Complaint on several grounds. First, it contended that the RESPA counts (the First and Third Claims) must be dismissed for these reasons:

1. The RESPA claim is preempted by the federal bankruptcy laws.

2. The chapter 13 Trustee lacks the statutory authority to submit a QWR.

3. The QWR was not sent to the proper servicer, which is AMC Mortgage Services, Inc.

4. RESPA does not require an annual accounting for bankrupt borrowers.

13 bankruptcy; and (2) to pay for an independent audit of this mortgage to determine the principal balance due on the mortgage. *See* R. 1 at pp. 16–17.

5. There is no private cause of action for supposed violations of § 2602 of RESPA and 12 CFR 3500.17 [*sic*]. Thus the Trustee has no basis for asserting a claim against Ameriquest.

Ameriquest sought dismissal of Claims Two and Four, the contract claims, for these reasons:

1. The claims for breach of contract are without legal merit.

2. Any cause of action against Ameriquest for breach of contract is preempted by federal law.

3. Ameriquest is not obligated under the debtor's chapter 13 plan to account for payments.

In its Reply brief, the defendant summarized the grounds for dismissal:

[Two of the causes of action must be dismissed on preemption grounds] (Counts One and Four). Another cause of action (Count Three) must be dismissed because there is no private cause of action. Another cause of action (Count Two) must be dismissed because it is contrary to the governing provisions of the Bankruptcy Code. Each of these bases for dismissal are [*sic*] properly the subject of a Rule 12(b)(6) motion.

R. 19 at iv. The court considers each of these arguments in turn.

### Discussion

The question before the court is whether the plaintiffs' Complaint must be dismissed as a matter of law pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[5] In order to state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2).[6] Until recently, courts relied on the Supreme Court's analysis of Rule 8(a) in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and in particular on its mandate that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 102. However, the Court recently criticized the "no set of facts" language in *Conley* and set forth what it considered a more plausible test for satisfying Rule 8(a)(2):

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "[entitlement] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citations omitted). According to the Court, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 1965 n. 3.

---

**5.** Federal Rule of Bankruptcy Procedure 7012(b) states that Rule 12(b)-(h) of the Federal Rules of Civil Procedure are applicable in adversary proceedings. Rule 12(b)(6) is the affirmative defense that the complaint must be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

**6.** Federal Rule of Bankruptcy Procedure 7008 states that Rule 8 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 8(a) states that a pleading "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a).

■ The Seventh Circuit Court of Appeals explained that, "[i]n *Bell Atlantic*, the Supreme Court retooled federal pleading standards, retiring the oft-quoted *Conley* formulation." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir.2007) (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99, and *Bell Atlantic*, 127 S.Ct. at 1969).

> In *Airborne Beepers* we read [*Bell Atlantic Corp. v.*] *Twombly* together with the Supreme Court's decision two weeks later in *Ericson[Erickson] v. Pardus*, ── U.S. ──, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), and observed that "we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers*, 499 F.3d at 667.

*Id.*, 507 F.3d at 619 (*quoting Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC*, 499 F.3d 663, 667 (7th Cir.2007)). Following the Supreme Court and the Seventh Circuit, therefore, this court accepts as true the factual allegations contained in the complaint and will dismiss the complaint only if it fails to set forth enough facts to state a claim for relief that is "plausible on its face." *St John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir.2007) (quoting *Twombly* ).

Ameriquest began by challenging the legal rather than the factual sufficiency of the allegations in the plaintiffs' pleading and by asking "[w]hether the causes of action, as pled in the Complaint, exist at all." R. 19 at iv. The court begins with Ameriquest's preemption arguments.

### A. Preemption Claims

Ameriquest first argued that relief was barred altogether by the Bankruptcy Code, which precludes a claim under RESPA that arises during the course of a bankruptcy case. *See* R. 10 at 5. It stated that the Code and the corresponding Bankruptcy Rules present a detailed statutory scheme for resolving claim matters, over which bankruptcy courts have exclusive jurisdiction. Outside of bankruptcy, the defendant claimed, borrowers may resolve disputes under RESPA by asserting that the account is in error and demanding correction of it. *See id.* at 7 (citing 12 U.S.C. § 2605(e)(1)(B)(ii), (e)(2)(A)). However, according to Ameriquest, once bankruptcy is filed, the RESPA provisions "are contrary to and in conflict with the provisions and processes of the Bankruptcy Code and Rules," which control. *Id.* (citing *Ameriquest Mortgage Co. v. Nosek (In re Nosek)*, 354 B.R. 331, 338–39 (D.Mass. 2006)).

The defendant relied on *In re Nosek*, a Massachusetts district court decision which held that recovery under RESPA was preempted by the Bankruptcy Code.[7] That court determined that the Bankruptcy Code's purpose—determining disputed claims within the structure of a bankruptcy court—conflicted with RESPA's requirements. *See id.* at 339. The Massachusetts court had relied on *Walls v. Wells*

---

7. The defendant also cited *Lomango v. Salomon Bros. Realty Corp. (In re Lomango)*, 2007 WL 1557422, 2007 Bankr.LEXIS 1873 (Bankr.D.Mass.2007) to support its preemption claim. However, *Lomango* is easily distinguishable on its facts. In addition, this court cannot conclude, as the *Lomango* court did, that the plaintiffs herein "failed to properly dispute that there was anything improper about the defendant's actions." 2007 WL 1557422 at *2. In one sentence, the *Lomango* court, citing *Nosek*, dismissed the plaintiff's RESPA allegation as preempted because it simply challenged the defendant's proof of claim. *See id.* at *3. *Lomango* did not explain or validate the preemption argument; its position on the issue, therefore, is unpersuasive in this court.

*Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002), which held that the Fair Debt Collection Practices Act ["FDCPA"] was preempted by the Bankruptcy Code. The district court then concluded that "the Code's claim resolution process for ongoing bankruptcy proceedings trumps the alternative remedial procedure found in RESPA," *id.*, and remanded the case to the bankruptcy court.[8]

This court's review of preemption case law leads to the clear conclusion that Ameriquest's reliance on *Nosek*, a Massachusetts district court ruling, and *Walls*, a Ninth Circuit decision, is of no benefit to it here in the Seventh Circuit. In *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir.2004), the Seventh Circuit Court of Appeals explicitly declined to follow the Ninth Circuit's decision in *Walls*. *See* Michael D. Sousa, "Circuit Split: Does the Bankruptcy Code Implicitly Repeal the FDCPA?," 25–Oct. Am. Bankr.Inst. J. 20, 62 (20 Oct. 2006) (stating that *Randolph* is "[i]n direct contrast to the result reached in *Walls* "). In *Randolph*, the Seventh Circuit vacated the decisions of two district courts which, like the Ninth Circuit in *Walls*, had held that "remedies under the Bankruptcy Code are the *only* recourse against post-bankruptcy debt-collection efforts—that the Code trumps the FDCPA ['Fair Debt Collection Practices Act'] when they deal with the same subject, even when the two statutes are consistent." *Id.* at 728. *Ran-*

*dolph* first stated definitively that "[o]ne federal statute does not preempt another." *Id.* at 730. It pointed out that, although the Code and FDCPA are operationally different in many ways, they also overlap, and "[o]verlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both." *Id.* at 731. It listed Supreme Court cases that had established that "overlapping and not entirely congruent remedial systems can coexist," *id.*, and concluded that the Bankruptcy Code does not trump the FDCPA—that § 1692e(2)(A) of the FDCPA and § 362(h) of the Bankruptcy Code "are simply different rules, with different requirements of proof and different remedies." *Id.* at 732. It then rejected the Ninth Circuit's position in *Walls:*

> Permitting remedies for negligent falsehoods would not contradict any portion of the Bankruptcy Code, which therefore cannot be deemed to have repealed or curtailed § 1692e(2)(A) by implication. To the extent that *Walls* holds otherwise, we do not follow it.

*Id.* at 732–33. Since the Seventh Circuit issued its thorough, thoughtful decision in Randolph, courts not under the jurisdiction of the Ninth Circuit have been persuaded by its rationale that the Bankruptcy Code neither precludes claims under the

---

8. The Massachusetts bankruptcy court, on remand, read the district court's decision as affirming its § 1322(b) finding "and merely disagree[ing] with the remedy applied to it." *Nosek v. Ameriquest Mtg. Co. (In re Nosek)*, 363 B.R. 643, 647 (Bankr.D.Mass.2007). Announcing that it "should have used its own equitable powers under Section 105(a) to redress the Section 1322(b) violation," *id.*, it found that Nosek was entitled to actual and punitive damages. *See id.* at 648. After recounting Ameriquest's incorrect payment history of Nosek's payments, the court stated that it "was outraged by Ameriquest's actions and found that its failure to maintain accurate accounts exacerbated Nosek's emotional distress." *Id.* at 649. The court commented that Ameriquest is "one of the largest and oldest home mortgage lenders and loan servicers in the U.S.," and it "uses the same accounting system in servicing all of its Chapter 13 debtors." *Id.* Finding that "Ameriquest's accounting practices are wholly unacceptable for a national mortgage lender," *id.*, it required Ameriquest to adjust its accounting practices and awarded damages under § 105(a) for Ameriquest's violation of § 1322(b). *See id.* at 650.

FDCPA nor impliedly repeals the FDCPA.[9]

Recently, a Massachusetts bankruptcy court adopted and extended the Seventh Circuit's position in *Randolph* by concluding that the Bankruptcy Code does not preempt claims under RESPA. *See Holland v. EMC Mortgage Corp. (In re Holland)*, 374 B.R. 409, 442–43 (Bankr. D.Mass.2007).

> This Court finds no inherent conflict between the Bankruptcy Code and the provisions of RESPA which would preclude a debtor from pursuing RESPA claims during a pending bankruptcy case. In fact, a debtor's interest in a cause of action for violations of RESPA or other federal consumer protection statutes which occurred prepetition, and, in the case of a Chapter 13 debtor, postpetition, are property of the estate. *See* 11 U.S.C. §§ 541(a)(1), § 1306(a)(1). Accordingly, to the extent that *Nosek* holds that such claims are preempted by the Bankruptcy Code, this court respectfully disagrees with the holding in that decision and shall not dismiss Count I based on that decision.

*Id.* at 443.

■ This court is in complete agreement with the reasoning of *Randolph* and

*Holland.* It finds no irreconcilable conflict between the Bankruptcy Code and RESPA; indeed, it believes that their remedial systems can and do coexist.[10] *See Rodriguez v. R & G Mortgage Corp. (In re Rodriguez)*, 377 B.R. 1, 7–8 (Bankr.D.P.R. 2007) ("We do not agree that compliance with RESPA ceases to exist once a foreclosure judgment is obtained, especially when a borrower files for bankruptcy."). In this case, as in *Rodriguez*, the debtor filed a chapter 13 petition because he wanted to keep his residence; in each case the QWR letter sent to the defendant to clarify the loan account went unanswered. RESPA allows requests for mortgage loan information by means of a QWR, and the Bankruptcy Code allows requests for such information to be made by a chapter 13 trustee making payments to creditors under a chapter 13 plan. The defendant did not refer to any Bankruptcy Code section that conflicts with a pertinent RESPA section. It also failed to show that it would be unable to comply with both statutes. In the court's view, Ameriquest did not prove that the RESPA claim was preempted by the Bankruptcy Code.

■ The court finds that the plaintiffs' Complaint demonstrated enough facts to

9. Cases following *Randolph* include *Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F.Supp.2d 599, 605 (E.D.Pa.2006) (holding that debtor was not precluded by Bankruptcy Code from challenging mortgagee's assessment under FDCPA, denying motion to dismiss plaintiff's FDCPA claims); *see also Drnavich v. Cavalry Portfolio Serv., LLC*, 2005 WL 2406030 at *2 (D.Minn.2005); *Burkhalter v. Lindquist & Trudeau, Inc.*, 2005 WL 1983809 at * 1 (E.D.Mo.2005); *Holland v. EMC Mortgage Corp. (In re Holland)*, 374 B.R. 409, 443 (Bankr.D.Mass.2007); *Gunter v. Columbus Check Cashiers, Inc. (In re Gunter)*, 334 B.R. 900, 904 (Bankr.S.D.Ohio 2005).

10. Courts regularly review debtors' allegations of RESPA violations within the bank-

ruptcy remedial system. *See, e.g., Hutchinson v. Delaware Savings Bank FSB*, 410 F.Supp.2d 374, 383 (D.N.J.2006) (denying bank's motion to dismiss plaintiff's sufficiently pled RESPA claim); *Byrd v. Homecomings Fin.'l Network*, 407 F.Supp.2d 937, 946 (N.D.Ill.2005) (granting defendant's motion to dismiss on ground plaintiff failed to show actual damages on RESPA § 2605(e) claim); *Campbell v. Countrywide Home Loans, Inc. (In re Campbell)*, 361 B.R. 831, 843–45 (Bankr.S.D.Tex.2007) (analyzing escrow shortages and parties' rights under RESPA and Bankruptcy Code); *In re Thompson*, 350 B.R. 842, 851–53 (Bankr.E.D.Wis.2006) (finding violations of RESPA obligations by loan servicing company, granting debtors damages).

state a claim under RESPA that is plausible on its face. It therefore determines that the Complaint presents a sufficient showing of entitlement to relief. Accordingly, the court denies Ameriquest's motion to dismiss the RESPA claims on the preemption ground.

■ Ameriquest also contended that the Complaint's state law breach-of-contract claim, the Fourth Claim for Relief, was preempted by provisions of the Bankruptcy Code. The defendant asserted that the Code's comprehensive system governed all aspects of bankruptcy cases, including the treatment of home mortgage claims in Chapter 13 cases. See R. 10 at 13. However, in its argument Ameriquest never discussed the principles governing federal preemption of state law and never referred to Indiana contract law or to any relevant provision of the Bankruptcy Code that preempted a state law. See, e.g., Aetna Health Inc. v. Davila, 542 U.S. 200, 214, 124 S.Ct. 2488, 2498, 159 L.Ed.2d 312 (2004) (holding that respondents' state law causes of action were preempted by ERISA § 502(a)(1)(B)); Dougherty v. Wells Fargo Home Loans, Inc., 425 F.Supp.2d 599, 608–09 (E.D.Pa.2006) (reviewing preemption categories, finding no risk of conflict between enforcement of state and federal bankruptcy laws). Nor did Ameriquest present any evidence that it could not comply with both federal and state statutes. The defendant's broad assertion that "[t]he provisions of the Bankruptcy Code preempt any claims under state law for supposed breaches of the Plan," R. 10 at 14, is an inadequate allegation on which to base a dismissal on preemption grounds.

Ameriquest reiterated its reliance on Nosek, the Massachusetts district court case discussed above, which held that RESPA claims and the implied covenant of good faith and fair dealing were preempted by the Bankruptcy Code. See R. 10 at 14 (citing Nosek, 354 B.R. at 337). This court finds that Ameriquest's reliance on Nosek was misplaced on this issue, as well. The Nosek court had based its analysis on Bessette v. Avco Fin'l Servs., Inc., 230 F.3d 439 (1st Cir.2000), cert. denied, 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001), which had held that debt affirmation agreements that are alleged to violate § 524(c) of the Bankruptcy Code are a matter exclusively of federal law, and thus that the state law cause of action for unjust enrichment was preempted by § 524 of the Code. See Bessette, 230 F.3d at 448. Bessette also concluded that federal courts enforce violations of § 524 through § 105, not through state court remedies for unjust enrichment. See id. at 447. Nosek extended the First Circuit's holding; the Massachusetts district court concluded that the assessment of damages for a violation of § 1322(b) was accomplished under § 105 of the Bankruptcy Code rather than under a state theory of good faith and fair dealing. See Nosek, 354 B.R. at 338.

■ In this case, however, there is no issue concerning a debt affirmation agreement or a state law claim of unjust enrichment. Even though the Seventh Circuit agreed with Bessette's specific holding that debt affirmation agreements are a matter exclusively of federal bankruptcy law under § 524, see Cox v. Zale Delaware, Inc., 239 F.3d 910, 913 (7th Cir.2001), it did not sanction a broadening of that position. This court declines both to extend Bessette and to apply Nosek's overbroad conclusion concerning the preemption of state law remedies to this case. It finds that Ameriquest failed to demonstrate that the Complaint's state law claims actually conflict with the Bankruptcy Code. See Dougherty, 425 F.Supp.2d at 609 (noting that defendant's alleged misconduct occurred post-confirmation, finding "little risk that allow-

ing Plaintiff's state law claims for breach of contract ... to go forward will disrupt the uniform application of the federal bankruptcy laws or contravene congressional purpose"). The court also finds that the plaintiffs have presented enough facts to state a claim for relief that is plausible on its face. Ameriquest's motion to dismiss the Complaint's Fourth Claim, the state law breach-of-contract claim, on preemption grounds is denied.

### B. *Other RESPA Claims*

The defendant also sought dismissal of the Complaint on the ground that there is no private cause of action for violations of § 2602 of RESPA.[11] *See* R. 10 at 10. Ameriquest relied on *Allison v. Liberty Savings*, 695 F.2d 1086 (7th Cir.1982), in which the Seventh Circuit held that "no implied private cause of action exists under § 10 of RESPA." *Id.* It asserted that the reasoning in *Allison* "applies with equal force" to § 2602 of RESPA and to its corresponding regulation, § 3500.17. *Id.* at 11. Ameriquest therefore insisted that the Complaint's Third Claim brought under RESPA must be dismissed.

■ Ameriquest correctly summarized the ruling in *Allison* that there was no express Congressional intent to create a private right of action under § 10 of RESPA, 12 U.S.C. § 2609. However, the plaintiffs sought remedies under § 2605, not § 2609, of RESPA. Section 2614 grants jurisdiction over private causes of action raised under §§ 2605, 2607, and 2608 of RESPA, and each of those statutes explicitly provides private civil remedies for violations of those statutes. *See, e.g.,* § 2605(f).[12] Courts routinely recognize private causes of action and remedies under § 2605. *See, e.g., Sanborn v. American Lending Network*, 506 F.Supp.2d 917, 923 (D.Utah 2007); *Morrison v. Brookstone Mortgage Co., Inc.*, 415 F.Supp.2d 801, 806 (S.D.Ohio 2005); *Pramco, LLC v. Torres*, 286 F.Supp.2d 164, 171 (D.P.R. 2003).[13] In fact, *Allison* made the distinction between the explicitly created private causes of action listed in § 2614 and the obvious omission of private remedies under § 2609. *See Allison*, 695 F.2d at 1088–89.[14] The court finds that the plaintiffs presented enough facts to state a claim for relief under § 2605 of RESPA. It also determines that the defendant has not established adequate grounds for dismissal

---

**11.** Section 2602 is the definitional section of RESPA; the plaintiffs cited to it when referring to Ameriquest as the servicer of a "federally related mortgage loan," a term defined in that provision. Contrary to the defendant's allegation, the plaintiffs did not base a cause of action on § 2602, but rather on § 2605, which concerns servicing of mortgage loans and administration of escrow accounts.

**12.** Section 2605(f) states: "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure" in specified amounts.

**13.** Federal courts regularly determine whether a loan servicer under RESPA has violated § 2605(e). *See, e.g., Elkins v. Ocwen Fed'l Sav. Bank*, 2006 WL 3147716 at *2 (N.D.Ill. 2006) (holding that mortgagor complied with

§ 2605(e)); *In re Hopkins*, 372 B.R. at 750 (denying dismissal of § 2605(e)(2) claim); *Cooley v. Wachovia Mortgage Co. (In re Cooley)*, 365 B.R. 464, 474–75 (Bankr.E.D.Pa. 2007) (refusing to dismiss debtor's RESPA claim based on servicer's failure to respond to QWR); *In re Tomasevic*, 273 B.R. 682, 691 (Bankr.M.D.Fla.2002) (concluding that debtor failed to establish RESPA damages).

**14.** Ameriquest also claimed, incorrectly, that two other decisions supported its position: *State of Louisiana v. Litton Mtg. Co.*, 50 F.3d 1298 (5th Cir.1995) (per curiam) held that § 2609 of RESPA does not imply a private cause of action, but the decision did not discuss § 2605; and *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357 (11th Cir.2006) noted that § 2605 expressly provides a private right of action but that § 2609 did not.

by claiming that there is no private cause of action available to the plaintiffs. It therefore denies Ameriquest's motion to dismiss the plaintiffs' RESPA claims on that ground.

■ Ameriquest sought dismissal of the RESPA claim on another ground: It asserted that the chapter 13 Trustee lacked the statutory authority to submit a QWR. According to Ameriquest, the Trustee was neither a borrower nor an agent of the borrower. *See* 12 U.S.C. § 2605(e)(1)(A) (requiring that the qualified written request come from "the borrower (or an agent of the borrower)"). Thus the Trustee had no legal right to send a QWR and Ameriquest had no obligation under RESPA to respond to the letter, the defendant insisted. The plaintiffs vehemently disagreed. Because RESPA does not define "agent of the borrower" and the case law does not clarify the term, this court considers whether a chapter 13 trustee can be considered an agent of the debtor-borrower under RESPA.

A chapter 13 trustee is assigned broad duties and powers under 11 U.S.C. § 1302(b) and, by incorporation, under § 704. They include such responsibilities as accounting for all property received during the administration of the chapter 13 case; investigating the debtor's financial affairs; advising the debtor on non-legal matters; assisting the debtor in performance under the plan; and providing an accurate final report and account when the chapter 13 plan has been completed. *See In re Lewis,* 363 B.R. 477, 481 (Bankr. D.S.C.2007) (describing a trustee's broad authority); *In re Avery,* 272 B.R. 718, 727–31 (Bankr.E.D.Cal.2002) (discussing trustee's vital duty to provide an accurate, detailed final report). The trustee also is responsible for disbursing payments to creditors under the plan unless the plan provides otherwise. *See* § 1326(c); *Padil-*

la v. *Wells Fargo Home Mortgage, Inc. (In re Padilla),* 379 B.R. 643, 658 (Bankr. S.D.Tex.2007) ("The Code ... creates a presumption in favor of payments disbursed through the trustee"). As Judge Lundin summarized in his comprehensive treatise, "[t]he trustee in a Chapter 13 case works with everyone and for no one." 1 Keith M. Lundin, Chapter 13 Bankruptcy § 58, 1, at 58–1 (3d ed. 2000 & Supp. 2006) (*quoted in In re Andreas,* 373 B.R. 864, 876 (Bankr.N.D.Ill.2007) (determining that the trustee, "a fiduciary owing duties to all parties in interest in a Chapter 13 case," had the authority to investigate attorney's post-bankruptcy misconduct)).

The court finds that a chapter 13 trustee acts as an agent of the debtor in the role of disbursing agent (collecting the plan payments from the debtor and distributing the funds to creditors in accordance with the chapter 13 plan) and in the role of final reporter to the court (preparing a final report and accounting that demonstrate the complete administration of the debtor's chapter 13 estate). In order to present that final report to the court, a trustee must ascertain that all payments to creditors had been made and that the debtor was not in default. A trustee who has made the debtor-borrower's mortgage payments every month under the plan, as this chapter 13 Trustee was required to do under Mr. Laskowski's plan, and who has increased the amounts of the monthly payments to Ameriquest at the direction of Ameriquest's employee, reasonably may be considered the agent of that borrower when inquiring into Ameriquest's records as the loan servicer. "Under RESPA, the borrower, or his agent, can initiate communication with the servicer by providing it with a qualified written request for loan information." *Hopkins v. First NLC Fin'l Servs., LLC (In re Hopkins),* 372 B.R. 734,

746 (Bankr.E.D.Pa.2007) (citing § 2605(e)(1)(B)).

The defendant offered no citation to the Bankruptcy Code, RESPA, or case law to justify its claim that a chapter 13 trustee was not an agent of the debtor-borrower and had no legal right to send a QWR, and the court found none. In the view of this court, in this case the Trustee and the debtor, together or singly, have standing to send a QWR to Ameriquest and to bring a complaint against Ameriquest for its lack of response. *See, e.g., Hudson v. United States Postal Serv. (In re Hudson)*, 216 B.R. 244, 246 (Bankr.W.D.Tenn.1997) (concluding that "[e]ither the trustee or the debtor, and perhaps both, have standing to bring" an action seeking injunctive relief and recovery of administrative costs for processing wage deduction orders); *United States v. Santoro*, 208 B.R. 645, 649 (E.D.Va.1997) (concluding that the trustee had statutory authority to bring a motion challenging the legitimacy of employer's post-confirmation administrative fee for processing wage deduction orders); *Kaliner v. Mortgage Elec. Registration Sys., Inc. (In re Reagoso)*, 2007 WL 1655376 (Bankr.E.D.Pa.2007) (ruling on RESPA action brought by trustee on behalf of debtor-borrower). The court denies Ameriquest's motion to dismiss on the ground that the trustee lacked statutory authority to submit a QWR.

■ Ameriquest raised two other reasons for dismissal of the Complaint's RESPA claims. It asserted first that the QWR was not sent to the proper servicer.[15] The defendant stated that, "[d]uring 2006 and 2007, the servicer of the Debtor's loan was and is AMC Mortgage Services, Inc.", and not Ameriquest. R. 10 at 8–9 (citing R. 1, Exs. G, I, L). The plaintiffs responded:

> Upon information and belief, Ameriquest Mortgage Company spun off a servicing company, AMC, in 2006. No notice was ever provided of this change in servicing to the Court or Trustee and the payment address remained the same. Ameriquest was the servicer of this loan from 2001 to 2006, and the required analysis upon change or transfer of servicers as required under § 3500.17(f) was not performed.

R. 18 at 8. Ameriquest disagreed; it replied that the QWR in fact was sent to the incorrect party, that the debtor was notified of the change in servicer, and that the Trustee, as "the supposed 'agent' of the Debtor," was charged with that knowledge.[16] R. 19 at viii–ix. The defendant then requested dismissal of the Complaint.

■ A complaint is worthy of dismissal when "the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. A.T. & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir.

---

**15.** "The term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan.)" 12 U.S.C. § 2605(i)(2). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan. . . ." 12 U.S.C. § 2605(i)(3).

**16.** Ameriquest also criticized the plaintiffs for failing to address the decisions cited by the defendant "in which similar RESPA claims were dismissed." R. 19 at viii. The court

notes that, when it examined the first case upon which Ameriquest relied, *Powell v. Aegis Mortgage Corp.*, 2007 WL 98372 (D.Md.2007), it discovered that the RESPA claim was not dismissed. *See id.* at *7 (concluding that "dismissal of plaintiffs' RESPA claim with respect to AWC is not warranted" because the loan documents attached to the complaint did not establish whether AWC was responsible for servicing the Plaintiffs' loan prior to July 1, 2003).

2007). The court assumed that all the well-pleaded facts in the complaint were true and considered whether the plaintiffs stated a legal claim with sufficient facts. In this case, facts in the plaintiffs' Complaint were conflicting: The Complaint itself referred to William Smith as the "bankruptcy specialist for Ameriquest," R. 1 at ¶ 52, but the exhibits attached to the Complaint included emails from William Smith at "amcmortgageservices.com." *Id.* Exs. G, I, L. Mr. Smith's emails did not refer to a change of servicer; nor did any other document in the record before the court.[17] The parties' dispute raised questions: whether the servicer had changed, whether notice of the change in servicer was provided, and, if so, when and to whom. Such questions are material issues of fact. Nevertheless, it appears that Mr. Smith, as bankruptcy specialist of Ameriquest or AMC, responded to the Trustee's office. The court finds that the plaintiffs' QWR claim was based on a cognizable legal theory and the factual detail in the Complaint was not too sketchy to state the RESPA claim. It also finds that Ameriquest's allegation of improper service was insufficient to demonstrate that the RESPA claim must be dismissed as a matter of law.

Finally, Ameriquest challenged the Complaint's Third Claim, which alleged that Ameriquest failed in its duty to conduct a yearly escrow account analysis as required under RESPA and the mortgage contract.[18] According to the defendant, the claim must be dismissed because RESPA does not require an annual accounting for bankrupt borrowers. Ameriquest claimed that the Code of Federal Regulations provides an exemption from the requirement that annual statements be provided when a borrower is in bankruptcy. Although § 3500.17(i) requires that "a servicer shall submit an annual escrow account statement to the borrower," the defendant asserted that subsection (i)(2) exempts servicers from the annual statement mandate when the borrower is a debtor. The plaintiffs countered that servicers are excused only from sending the annual statements.

Section § 3500.17 is a lengthy regulation that "sets out the requirements for an escrow account that a lender establishes in connection with a federally related mortgage loan." 24 CFR § 3500.17(a). Subsection (i) sets up the requirements for annual escrow account statements. The contents of such statements are listed in subsection (i)(1). Following that subsection is the exemption provision to which the parties refer:

(2) *No annual statements in the case of default, foreclosure, or bankruptcy.* This paragraph (i)(2) contains an exemption from the provisions of § 3500.17(i)(1). If at the time the servicer conducts the escrow account analysis the borrower is more than 30 days overdue, then the servicer is exempt from the requirements of submitting an annual escrow account statement to the borrower under § 3500.17(i). This exemption also applies in situations where the

---

**17.** The court notes that, on February 13, 2008, the court sent Ameriquest a "Notice of Assignor of Filing of Assignment of Claim" notifying it that, on February 11, 2008, Citi Residential Lending Inc. had filed a notice of transfer of Ameriquest's claim. If no objections are filed by March 13, 2008, Citi Residential Lending Inc. will be substituted for Ameriquest as the claimant. *See* R. 66.

**18.** Ameriquest did not object to ¶ 81 of the Complaint, which set forth the mortgage contract provision requiring the Lender to give to the Borrower "an annual accounting of the Funds." R. 1 at 14.

servicer has brought an action for foreclosure under the underlying mortgage, or where the borrower is in bankruptcy proceedings.

24 CFR § 3500.17(I)(2).

 The court finds that this exemption excuses a servicer only from providing the debtor with the subsection (i) annual escrow account statement. It does not excuse a servicer from the requirements remaining in § 3500.17—conducting an annual escrow analysis (*see* § 3500.17(c)(3)) and providing notice of account deficiencies or shortages at least once a year (*see* § 3500.17(f)(5)). In addition, subsection (I) requires a servicer to maintain records for each borrower's escrow account for at least five years after it last serviced the account, and it allows a borrower to seek information in those records by filing a QWR. *See* § 3500.17(*l*)(1–5).

In fact, subsection (i)(2) makes clear that the servicer must conduct its escrow account analysis. The exemption is triggered only if the borrower is more than 30 days overdue. After that time period, the servicer is excused from submitting to the borrower the annual escrow account statement required by § 3500.17(i). The regulation provides that the exemption applies even to a debtor-borrower who is more than 30 days overdue. The court finds, therefore, that the bankrupt-borrower exemption is narrow and that the duty of a servicer to conduct its escrow analysis and to notify the borrower of deficiencies at least annually is unchanged. *See In re Dominique,* 368 B.R. 913, 916 (Bankr. S.D.Fla.2007) (concluding that RESPA and its regulations "unambiguously and unequivocally impose upon a loan servicer the obligation to do an escrow analysis annually and to provide a borrower with notice, no less than annually, of any shortfall or deficiency"). The court therefore denies dismissal of the RESPA claims pursuant to 24 CFR § 3500.17.

In sum, after considering the many reasons posited by the defendant for dismissing the RESPA claims, the court determines that the defendant has failed to provide any justification for their dismissal and that the Plaintiffs' Complaint has set forth enough facts to state a claim for relief that is plausible on its face.

### C. *Contract Claims*

 In their Second Claim for Relief, the plaintiffs raised allegations arising from the Bankruptcy Code. They asserted that Ameriquest was bound by the terms of the debtor's confirmed Chapter 13 Plan and that the defendant, by not accounting for the debtor's timely and complete postpetition payments, failed to abide by the terms of the confirmed plan pursuant to 11 U.S.C. § 1322(b)(5). In their Fourth Claim for Relief, the plaintiffs alleged that Ameriquest breached the implied covenant of good faith and fair dealing by its inability or unwillingness to account for and properly credit the Trustee's timely payments on the debtor's mortgage.

 Ameriquest argued that claims two and four must be dismissed on the ground that they are without legal merit. It contended: "Nowhere in the annals of reported bankruptcy decisions has any court ever applied the covenant of good faith and fair dealing or breach of contract theories under state or federal law to a Chapter 13 plan" because a "bankruptcy plan is a legal construct authorized by federal statutes ... not a contract, governed by state or federal contract law." R. 10 at 12. In the court's view, this sweeping pronouncement does not demonstrate that claims two and four lack merit. It is a bedrock bankruptcy principal that parties to a chapter 13 plan are bound by it when it is confirmed; for that reason, courts often compare a plan to a contract.

*See In re Harvey*, 213 F.3d 318, 321 (7th Cir.2000) (stating that "a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all creditors"); *accord, Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 148 (4th Cir.2007) ("A confirmed Chapter 13 plan is 'a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor[s].' ") (quoting *Matter of Penrod*, 169 B.R. 910, 916 (Bankr.N.D.Ind.1994)). It is also clear that parties who fail to object to the confirmation of a plan are barred by the principles of res judicata from later attacking the confirmed plan. *See* 11 U.S.C. § 1327(a); *In re Harvey*, 213 F.3d at 321; *accord, Friendly Finance Service–Eastgate Inc. v. Dorsey (In re Dorsey)*, 505 F.3d 395, 398–99 (5th Cir. 2007) (per curiam). In this case, the debtor's confirmed plan proceeded to its conclusion without objection from the defendant. Since October 2006, the debtor and Trustee have attempted to move to discharge and closing. The defendant is barred from raising a collateral attack on the debtor's plan now. *See In re Cleveland*, 349 B.R. 522, 533 (Bankr.E.D.Tenn. 2006) ("Accordingly, a confirmed Chapter 13 plan is res judicata, and as such, absent a default under the terms of the confirmed plan, creditors are precluded from making post-confirmation assertions of any interest other than those specifically provided for in the plan."); *In re Commings*, 297 B.R. 701, 709 (Bankr.N.D.Ill.2003) (deny-

ing post-confirmation motion to modify stay). The court declines to dismiss the Second and Fourth Claims of the Complaint based on the defendant's belatedly raised contention that a chapter 13 plan is a "legal construct" rather than a "contract." [19]

 Nor will the court dismiss those claims on the ground that Ameriquest had no obligation to account for payments under the terms of the chapter 13 plan. *See* R.10 at 14–15. The debtor's plan contained a provision that the creditor must notify the debtor and/or the Trustee if escrow payments were to be changed. The plan was confirmed on July 17, 2002, without objection from the defendant. The Trustee made payments pursuant to the confirmed plan without objection from the defendant. Any argument Ameriquest now raises, at the conclusion of the plan, concerning prohibitions to modifications in the mortgage provisions is barred by res judicata.[20]

> This [res judicata effect of a confirmed Chapter 13 plan] accomplishes the purpose of § 1327(a) by granting "finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order."

*In re Cleveland*, 349 B.R. at 533 (quoting *In re Thaxton*, 335 B.R. 372, 374 (Bankr. N.D.Ohio 2005)).

---

**19.** The defendant bolstered its argument by relying on *Carvalho v. Federal Nat'l Mortgage Ass'n (In re Carvalho)*, 335 F.3d 45 (1st Cir. 2003). This case concerned chapter 13 debtors' default on their plan obligations and the effect of the lifted automatic stay granted to the mortgage holder, which held a bifurcated claim. The court finds that the First Circuit case is inapposite in its facts and law, and it does not support the defendant's argument that a bankruptcy plan is not a contract.

**20.** To support its contention that a chapter 13 plan cannot modify "provisions governing how payments must be applied," the defendant cited *In re Good*, 207 B.R. 686 (Bankr.D.Idaho 1997). R. 10 at 14. However, *Good* concerns a mortgage lender's objection to the confirmation of a chapter 13 plan; it is inapposite to the post-confirmation issues before this court.

The court finds that the Complaint sets forth enough facts to state claims for relief that are plausible on its face and that dismissal is not required as a matter of law. It denies Ameriquest's motion to dismiss each and every count of the Complaint for failure to state a claim upon which relief can be granted.

### D. *Plaintiff's Signature*

■ Ameriquest raised one more argument. It contended that the Complaint must be dismissed because it was not signed by one of the plaintiffs, namely the debtor. According to the defendant, "Bankruptcy Rule 9011(a) unconditionally requires that[,] if the Debtor is one of the plaintiffs, he sign the Complaint." R. 19 at iii. The plaintiffs responded that the debtor consented to being a party in this adversary proceeding, even though he did not sign the Complaint. *See* R. 18 at 5. They also asserted that there was no requirement, under the Bankruptcy Code or Rules, that the debtor sign the Complaint. *See id.*

Rule 9011(a) of the Federal Rules of Bankruptcy Procedure states:

> (a) Signature. Every petition, pleading, written motion, and other paper ... shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers.... An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

Fed. R. Bankr.P. 9011(a). According to the Rule, the court is required to strike an "unsigned paper." In this case, the Complaint was signed by the Trustee, who is an attorney, but not by the debtor, who represented himself in this adversary proceeding. The case law consistently states that a pleading or motion must be signed by an attorney *or* by the party himself if appearing pro se. *See Matter of Graves,* 70 B.R. 535, 539 (N.D.Ind.1987). In addition, the rule does not mandate that the paper be signed by all parties, but rather by "at least one attorney of record" or the party himself.

By signing a pleading, a party or attorney certifies that, "to the best of the person's knowledge, information and belief," the document was presented for a proper purpose, the legal contentions were warranted and the factual contentions had evidentiary support. Fed. R. Bankr.P. 9011(b). The rule requires pro se parties to sign "in an effort to engender honest and truthful disclosures." *In re Graffy,* 233 B.R. 894, 897 (Bankr.M.D.Fla.1999). In this case, however, the missing signature of the debtor does not suggest that honest disclosures were not made. The party best able to make the required representations is the Trustee, who made the payments under the plan on behalf of the debtor and is required to issue a final report to the court. Although, in the view of the court, the inclusion of the pro se debtor's signature on the Complaint would have been the better course, the court does not consider the omission of his signature to be a defect in the procedural rule. The omission certainly is not a sufficient basis for dismissal of the Complaint. *See In re Koliba,* 338 B.R. 39, 47 (Bankr. N.D.Ohio 2006) ("[T]his Court cannot accept the UST[rustee's] position that the lack of debtor's signature on a petition, whether filed by paper or electronically, deprives this Court of jurisdiction over the case."). Accordingly, the court determines that dismissal based on the omission of the debtor's signature is not warranted.

### CONCLUSION

For the reasons stated above, the court denies the Motion to Dismiss filed by the defendant Ameriquest Mortgage Company

against the plaintiffs Chapter 13 Trustee Debra L. Miller and debtor Dale Thomas Laskowski. The defendant's answer to the Complaint is due within thirty days of the date of this Memorandum of Decision.

SO ORDERED.